Napton, judge,
delivered the opinion of the court.
This was a bill in chancery to enjoin a judgment for damages obtained by Reese at law, upon the covenants in a deed conveying to said Reese a lot in the town of Monticello.
The bill, answer and exhibits, show the following facts :
In 1839, W. L. Smith sold a lot in Monticello for $450, and he and his wife executed a deed for the same, containing the words “ grant, bargain and sell,” and also special covenants of seizin against incumbrances, good right and title to convey, and general warranty. In 1843 *347 Reese brought his action of covenant upon the covenant of seizin in this deed against Mrs. Smith, (the covenantor having previously died) who was the devisee of the principal part of the real and personal estate of W. L. Simith, and recovered the purchase money and interest as damages. He had given notice of the defect of title a day or two previous to the institution of the suit. Smith, it seems, had purchased the lot of one Davis, who was in possession at the time, and who had a deed from one Simpson, and the latter had also adeed from one Coif-man. The last, it appeared, eventually had no title, legal or equitable.
So soon as Mrs. Smith was advised of the want of title in her husband, and the intention of Reese to sue, she instituted an investigation into the title, and ascertained that the lot had been sold originally at a public sale of lots in that village, by the commissioners of the county court, to one McReyolds, and that McReynolds had transferred his tje tie and his evidences of title to one Penin. No deed had been made by the commissioners, but a memorandum of sale had been given. She accordingly procured from Penin a deed for his interest, and also an order upon the commissioner to make the conveyance to herself. This was done and a deed duly executed by the commissioner directly to Mrs. Smith and by her to Reese. The latter deed was tendered to Reese, but declined. This tender was made in January, 1844, before the judgment at law was obtained. This judgment was rendered at the June term 1844.
It appeared from the evidence that Mrs. Smith had used due diligence in procuring this title. It also appeared from both the bill and answer, that the value of property in Monticello, had greatly depreciated since the original purchase of Reese. It was also admitted that Reese had gone into possession immediately after the purchase, and had made some improvements, and that his possession had been undisturbed.
The complainant had a decree enjoining all the judgment at law except for the costs, and compelling the defendant to accept the title tendered.
The object of the covenants in a deed is to secure the title and possession of the property conveyed. The covenant of seizin is designed to secure the legal seizin of the land, and as it is framed under our statute, to secure a seizin of an indefeasible estate in fee simple. If the simple covenant of seizin be broken, the party is entitled to damages equal to the purchase money and intest, because if the covenantor *348 had no seizin, the title has wholly failed, and the covenantee has paid his money without consideration. If our statutory covenant of seizin of an indefeasible estate be broken, the covenantor having had seizin, but of a defeasible estate, the damages will be nominal until the estate has been actually defeated, or the right to defeat it has been extinguished. Collier vs. Gamble 9 Mo. R. 466. The rule of damages in cases of breaches of covenants, is not an inflexible one, operating under all circumstances alike, but adapting itself to the real injury sustained. Hence where there is a covenant of seizin which is broken, and subsequently to the breach the covenantor acquires the title, if there be in the deed a covenant of general warranty by virtue of which the covenantee will by operation of law be vested with the subsequently ac- • quired title, the damages can only be nominal- The covenantee is entitled to his verdict, but as he has actually got the title by estoppel, it would be gross injustice to return him the purchase money with interest, and at the same time suffer him to retain possession and title. The defence is available at law and may be given in evidence, not as a bar to the action, but in mitigation of damages. Leland vs. Stone, 10 Mass. R. 459; Baxter vs. Bradbury, N. H. In this case Smith, the grantor in the deed to Reese, was dead before the defect of title was discovered, and suit was brought against his personal representatives. The subsequently acquired title of Mrs. Smith could not pass to the grantee Reese, by virtue of our statute, or the common law principle which the statute recognizes, because Mrs. Smith, though a party to the conveyance, was not bound by the covenants contained therein. Had the grantor, W. L. Smith, acquired the title from the county of Lewis, before the trial of the action at law, such acquisition of title, as it would have passed, by virtue of our statute, directly to Reese, would have been admissible in mitigation of damages, and have reduced the plaintiff in that suit to merely nominal damages. But the present complainant, who was defending that suit, in her representative character, could not make such a defence. The covenant of general warranty would not pass her title to Reese, and a court of law had no means of compelling him to take the title. A resort to a court of equity was her only resource. She was forced to apply for a specific performance, and such is the object of the present bill.
In considering the question which is thus presented, it is important to keep in view the distinction between executed and executory contracts. The distinction is an important one, and has a most material influence in determining the discretion of the court, which is invoked *349 in all applications for a specific performance. In the multitude of cases to be found in the reports on this subject of specific performance,, the greatest confusion would be found to prevail, unless we keep in view those cases in which a contract for a conveyance is sought to be enforced, and those in which a conveyance has been made, and a covenant in the conveyance is sought to be enforced. In executed contracts, the courts will rarely rescind without proof of fraud. Where the vendee is put in possession and has his conveyance and is undisturbed, and the vendor, so soon as he is apprised of objections, seeks to remove and does remove them, a court of equity would hardly interfere actively to rescind. Whether the court would interfere with a judgment at law obtained upon a covenant in a conveyance, must depend upon the circumstances. Where the conveyance is executory and no deed has been made, it is equally rare for a court of equity to interfere, after the vendor has sued upon his contract and recovered damages at law. Unless the conduct of the purchaser has operated to some extent as a fraud upon the vendor, and lulled him into security when vigilance on his part might have prevented the difficulty, the court will not interfere. The only exception to this rule is when the delay in making the title has not resulted from the negligence of the vendor, but was occasioned by a defect which could not be remedied without the lapse of a considerable time, and that defect was known to both parties when the contract was made. Indeed,-such cases can scarcely be considered an exception, for to insist on a conveyance at a particular day, when the vendee knew at the time the thing was impossible, and bought with a knowledge of the defect of title, is evidence of a want of good faith. Craig vs. Martin 3 J. J. Marsh 337. We shall therefore lay out of view all the cases which concern executory contracts, and with the understanding that the principles which govern the courts; in enforcing remedies upon them are totally dissimilar to those which are applicable to executed contracts. The material facts proved in this case we understand to be these :
There was entire good faith on the part of the vendor, Smith. This is material, and we think, fully proved, not by any positive testimony, but by the circumstances of the case. The deeds from Coffman and wife' to Simpson, and from Simpson and wife to Davis, and from Davis and wife to W. L. Smith, were all recorded, and Davis was- in possession when Smith purchased from him. Smith took possession upon purchasing, and expended some money on the lot in making additional improvements. He, no doubt, believed his title to b,e good, and Reese, it *350 would seem, was of the same opinion, and both parties were equally ignorant of the want of title in Coffman.
In the next place, it is worthy of observation that no question as to lapse of time arises in this case. There is no reason to believe that the defect in Smith’s title was known to any of the parties in his life-time, ánd when it was discovered, no time was given to his executrix, the present complainant, to remedy the defect. There was no laches on her part, for the suit at law was commenced by Reese the very next day after the notice was given. Nor did any laches occur after the commencement of the suit. The suit was commenced on the 8th September, 1843, and the title obtained by Mrs. Smith from the commissioner was tendered the 1st of January, 1844. Less than four months was consumed by the complainant in her efforts to proctire deeds from persons, some of whom lived in remote parts of the State. It is not very probable that any change took place in the value of the property during this interval.
It is a mistake to suppose that the suit at law upon the covenant of seizin, is to be regarded as a rescisión or disaffirmance of the contract by Reese, Where a vendee has not received a deed, and sues upon the contract be which he is entitled to one, for the recovery of his purchase money, such suit is a disaffirmance of the contract, and it is in such cases that the authority of a court of equity to interfere is rarely exercised. But the suit at law in this case was upon a covenant in the conveyance, and a recovery in that suit would not prevent the covenantee from suing the next day upon any other covenant in the same deed. He is entitled to the benefit of all the covenants, and although it may be that a court of law would not permit him, after he had recovered upon one covenant the whole purchase money and interest, to get more than nominal damages upon another, yet this will not affect his legal rights to the benefits of all the covenants.
The* bill of the complainant has two objects in view :
1st. To compel the defendant to receive a conveyance, and
2d. To prevent the defendant, after thus recovering the title, from collecting his judgment at law.
If the .court can compel the defendant to receive the title, it needs no argument .to show that the defendant, after receiving the title, should not be permitted to enjoy the estate under an indefeasible title, and at the same time retain the purchase money. Had the title been acquired by Smith, in his life-time, there is no doubt but that title would have passed from Smith to his vendee, Reese, and that if this had taken place *351 before the trial of the action on the covenant, it would have restricted the plaintiif to nominal damages. It is said that a court of equity cannot compel a covenantee to accept performance in lieu of damages, after the covenantee has elected to take the latter. Bfit a court of equity in exercising such a power, would only be following the law, and if the covenantor acquires his title after the suit at law has terminated, what could prevent a court of equity from taking notice of what the silent operation of our statute of conveyances would do without the intervention of any court? Would a court of equity, under such circumstances, allow the covenantee to pocket his damages and also retain the land ? And can it make any difference in principle that the after acquired title has been through the personal representative and not through the covenantor himself? It is the act of God alone which has produced this change in the situation of the parties.
The fact that this property has very much depreciated in value, is the strongest circumstance in the case against the exercises of equitable interference. Had the contract been executory, it would, perhaps, taken in connexion with the lapse of time, be conclusive against the bill. But it must be observed that in this case, the question is not whether the vendee shall be compelled to complete a contract and take a conveyance for land, which he agreed to take \vhen land was worth much more than it is now. The contract has been made and the conveyance accepted, and possession taken and enjoyed without disturbance. The vendee, having his deed, with covenants of general warranty and seizin and for further assurance, could undoubtedly compel the vendor to convey any subsequently acquired title to him. He may sue on the covenant of seizin and recover damages, but, if he prefers, he may still resort to his covenant for further assurance or general warranty. The remedy is then reciprocal. Had the property risen in value, the vendee could unquestionably have forced the title from the vendor, had the vendée acquired any subsequent to his conveyance.
The case of Cotton vs. Ward (3 Mon. 312) is notunlike the present, and is a decisive expression of opinion on the part of the Kentucky court of appeals in favor of the exercise of such a power by a court of chancery. Cotton had conveyed the title to Ward, and put him in possession, and having obtained a judgment against him for a part of the consideration, Ward enjoined it for alleged defects in the title. Pending the injunction, Ward brought his suit at law for a breach of the covenant of seizin, and recovered damages. Cotton filed a cross-bill to enjoin this judgment, and being able to exhibit, at the hearing, a *352 perfect title, Ward’s injunction was dissolved, and Cotton’s perpetuated. Whereby Ward was compelled to take the title and give up his judgment for damages.
As to the idea fhat a court of equity will never interfere after the vendee .has exercised his privilege of electing damages at law, this, we have seen, is not so. Even in executory contracts, the authorities are numerous where the vendee has been compelled to give up damages recovered upon a recision of the contract in a suit at law, and accept performance in lieu thereof. This is usually done, and indeed always done, where time is not of the essence of the contract, and the lapse of time has not arisen from any default of the vendor, and the situation and value of the property has not materially changed. And if this will be done in executory contracts, there is much more reason why the power should be exercised where the contract has been executed.
In relation to the sufficiency of the title offered in this case, we suppose there can be no question. The deed from the commissioner of the county, executed in pursuance of a written transfer of the equitable title from Penin, conveyed the legal title which was in the county of Lewis, to Mrs. Smith.
Judge McBride concurring, the decree is affirmed.