PETER MUSSER and others *vs.* JOHN McRAE and another.

October 3, 1890.

**Railway Land Grant—Indemnity Lands—Patent as Evidence of Selection.**—Where an act of congress granting lands to the state of Wisconsin in aid of railroads provided that it should be lawful for agents appointed by the railway company entitled to the grant to select, subject to the approval of the secretary of the interior, from the public lands of the United States, "deficiency" lands within certain defined indemnity limits, *held*, that the issuance of a patent by the United States directly to the railway company for lands so selected by an agent of the company was evidence that the company had complied with all the conditions of the grant, and was entitled to the lands described therein, and that the title passed from the United States at the date thereof.

**Same—Trespass after Selection and before Patent Issued.**—And where it appeared that after certain deficiency lands had been earned by the railway company, and had been so selected and duly certified to the general land-office, but prior to the issuance of the patent, timber had been wrongfully cut and removed therefrom by trespassers, *held*, that the title acquired by the patent must be held to relate back to the selection of the land, so as to save to purchasers to whom the lands had been granted by the company, before the trespasses, a right of action for the timber wrongfully removed from the land, or its value.

After the decision of the former appeal in this action, (38 Minn. 410,) the issue of title was retried before *McCluer*, J., the parties

stipulating that the special findings made by the jury on the former trial on the other issues should stand as if made on the new trial. The defendants appeal from an order refusing a new trial after judgment ordered for plaintiff for $1,089.20.

*Fayette Marsh,* for appellant.

*Clapp & Macartney,* for respondents.

VANDERBURGH, J.   When this case was here before, (38 Minn. 409; 38 N. W. Rep. 103,) it was. held that the proof was insufficient to show that plaintiffs had acquired title to the lands upon which defendants admit that they had cut the logs in question, when the trespass was committed.   In other words, it did not appear that the title had passed from the United States, because the land is situated within the indemnity limits of the Chicago, St. Paul, Minneapolis & Omaha Railway Company, in the state of Wisconsin, under the land-grant act of congress of 1864, and it was not made to appear that the selection of this land to supply a deficiency within the 10-mile limits had been made by the secretary of the interior, as required by the act referred to.   The land in question was with other lands patented by the state of Wisconsin to the railway company under which the plaintiffs claim, in 1882, and the trespasses committed in the years 1885 and 1886.   The state patent was held insufficient evidence that the title to the deficiency lands had passed, under the terms of the land-grant acts.   Upon the second trial, it was shown that a patent was issued by the United States directly to the railway company, dated August 25, 1887, wherein the selection of the land is recited, but it does not appear when prior to the issuance of the patent such selection became operative or effectual by the approval of the secretary of the interior.   Under the former decision of this court, then, it does not appear that the railway company acquired title until this patent was issued.

The language of the opinion of this court on the former appeal is that, "as to lands to be taken for deficiencies, it was necessary that something more than fixing the line of the road should be done.   It was necessary that there should be a selection and an approval of such selection by the secretary of the interior."   The same rule is recognized and adopted by the supreme court of the United States.

And, in respect to deficiency or "lieu" lands under the same grant, that court, in *Wisconsin R. Co.* v. *Price Co.*, 133 U. S. 496, 511, (10 Sup. Ct. Rep. 347,) say: "The approval of the secretary was essential to the efficacy of the selections, and to give to the company any title to the lands selected. His action in that matter was not ministerial but judicial. * * * Until the selections were approved there were no selections in fact, only preliminary proceedings taken for that purpose, and the indemnity lands * * * were incapable of identification, and remained the property of the United States. The government was indeed under a promise to give the company indemnity lands in lieu of what might be lost by the causes mentioned, but such promise passed no title, and, until it was executed, created no legal interest which could be enforced in the courts." Upon such selection, however, the company became entitled thereto by virtue of the land-grant acts. In this case there is no evidence of such approval, but the patent was evidence that the company had complied with the conditions of the grant, and was entitled to the lands selected, and obviated the necessity of any other evidence of its right to the lands. 133 U. S. 510, (10 Sup. Ct. Rep. 346.) Upon the state of facts presented by the record the title acquired by the company under the patent unquestionably inured to the plaintiffs, its grantees, and their further contention is that the title derived from the government under the patent took effect by relation as of the date of the selection of the lands by the company, the approval of which is implied in the issuance of the patent, if not as of the date of the location of the railroad, when the lands within the indemnity limits became subject to the provisions of the grant. This is substantially the only question between the parties on this appeal.

The lands were granted to the state of Wisconsin, and were in turn by the legislature of the state granted to the railway company, subject to the conditions of the grant. The land-grant act of 1864, § 1, (13 U. S. St. at Large, 66,) referred to in the record, contained the following provisions in reference to the indemnity land: "In case it shall appear that the United States have, when the line or route of said road is definitely fixed, sold, reserved, or otherwise disposed of any sections or parts thereof granted as aforesaid, or that the right of pre-emption

or homestead has attached to the same, then it shall be lawful for any agent or agents to be appointed by said company to select, subject to the approval of the secretary of the interior, from the public lands of the United States nearest to the tier of sections above specified, as much land in alternate sections or parts of sections as shall be equal to such lands as the United States have sold or otherwise appropriated, or to which the right of pre-emption or homestead has attached as aforesaid, which lands   *   *   *   shall in no case be further than twenty miles from the line of the said road."

It appears that the agent of the railway companies entitled to the lands had selected the deficiency lands, including the lands in question, which selections were duly certified by the proper United States land-officers, not later than June 14, 1883. And due proof of the construction of the coterminous line of railway, and that the lands had been earned by the company by a compliance with the conditions required, had been filed through the secretary of the interior in the general land-office. The United States patent, after reciting the land-grant acts and the proceedings above referred to, including the selection of the lands by the agent of the railway company and the certification thereof, proceeds, "in consideration of the premises, and pursuant to the said act of congress," to grant to the railway company the lands so selected and certified. The right to the indemnity lands was fixed by the grant, and the lands reserved therefor were thereby made subject to this right of selection. Certain proceedings must be had and conditions complied with before such selections could be made, but which would culminate in a title to certain specific lands when had and performed. Of course it was not contemplated that the lands which the railway company might be entitled to so select should in the mean time be stripped of standing timber, and their value destroyed, either by the act or license of the government. The doctrine of relation is founded in equitable principles, and the party claiming its application must show an equity in his favor. It is a fiction of law resorted to for the advancement of right and justice,—*ut res magis valeat quam pereat*,—though it is not allowable when it would defeat the rights of third persons. But, as it is admitted that the defendants were naked trespassers, they have no such

rights to interpose here.   Nor will the doctrine be so applied as to
relieve a trespasser from all responsibility for his wrongful act.
*Menvil's Case,* 13 Rep. 19.   But the principle is contended for here
to preserve to the plaintiffs the right of action to recover the timber
or its value wrongfully taken by the defendants, and there seems to
be no reason why it may not be so applied for the advancement of
justice, and to give the full effect to the grant it was intended to
have.   In *Landes* v. *Brant,* 10 How. 348, 372, the court cite with
approval the language of Cruise on Real Property, (volume 5, p.
510:) "There is no rule better founded in law, reason, and conven-
ience than this, that all the several parts and ceremonies necessary
to complete a conveyance shall be taken together as one act, and
operate from the substantial part by relation."   See, also, Vin. Abr.
"Relation;" *Jackson* v. *Ramsay,* 3 Cow. 75, 80, (15 Am. Dec. 248,
253, note;) *Jackson* v. *Bull,* 1 John. Cas. 81, 85, note.   In *Landes*
v. *Brant, supra,* where a party had filed his claim and taken the
initiatory steps to obtain title under a Spanish grant, and this right
and title was sold on execution before the decision of the commis-
sioners who were to pass on the validity of that claim, but which
was subsequently confirmed by them, and a patent long afterwards
issued, it was held that the confirmation in 1811, and patent issued
in 1845, must be held to relate to the first act,—that of filing the
claim in 1805,—so as to protect the rights of the execution cred-
itor.   So in *Heath* v. *Ross,* 12 John. 140, which was an action of
trover for timber cut between the application for and date of a
patent from the state, and its ensealing and delivery by the secre-
tary of state, the title was held to relate back to the first act, so
as to entitle the plaintiff to maintain an action against a mere
wrong-doer for the value of the timber cut and carried away in the
mean time.   In this case the acts and proceedings upon which the
patent was based may be considered together.   The deficiency lands
selected by the company were such as they were entitled to, and
the patent is evidence of the ratification of the selection, and this
selection, duly certified to the department, may be treated as a law-
ful application for the confirmation or approval thereof.   It was an
assertion of their claim to the particular lands, and, if approved, the

title may properly be held to relate back at least to the date of such selection in order to protect them against trespassers upon the lands, and so as to entitle them to maintain replevin or trover for timber removed therefrom.

Order affirmed.