WILLIAM C. RESSER *et al. vs.* PATRICK H. CARNEY.

Argued by appellant, submitted on brief by respondent, Nov. 29, 1892. Decided Jan. 30, 1893.

**Title to Indemnity Railroad Land Granted Northern Pac. R. Co.**

A selection of "indemnity" lands by the Northern Pacific Railroad Company, which was required to be made "under the direction of the Secretary of the Interior," was not effectual until in some way approved or sanctioned by that officer.

**Covenant of Seisin, Breach of.**

A purchaser of vacant real estate, receiving a deed thereof, with a covenant of seisin, from one who has no title, the covenant being wholly broken, is not *compelled*, at least after he has commenced an action for the breach of the covenant, for the recovery of the purchase money paid, to accept a title which his grantor may then acquire. *Burke* v. *Beveridge*, 15 Minn. 205, (Gil. 160,) commented upon.

**Same—Grantee not Estopped by Covenant in His Mortgage for Part Purchase Price.**

Such a grantee, at the time of the conveyance to him, having given back to his grantor a mortgage of the same land, with a like covenant, to secure the payment of a part of the purchase price, is not estopped by the covenant in the mortgage from maintaining such action for breach of the covenant in the deed.

**Same—Nor by Foreclosure of Such Mortgage.**

A foreclosure of the purchase-money mortgage by the vendor, he purchasing at the foreclosure sale, and nonredemption therefrom, will not extinguish the right of action of the mortgagor for breach of the covenant in the deed to him.

**Same—Grantor not Discharged.**

As between the parties, the purchase-money mortgage is not effectual to discharge the vendor from the obligation created by the covenants in his deed.

Appeal by plaintiffs, William C. Resser and Charles Davison, from a judgment of the District Court of Ramsey County, *Kelly,* J., entered March 15, 1892, that they take nothing by the action and for costs.

By Act of July 2, 1864, the Congress of the United States granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of its railroad, every alternate section of the public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of its line of road through the Territories of the United States; and whenever, prior to the time that the line of the road should be definitely fixed and a plat thereof filed, any of said sections or parts of sections should have been granted, sold, reserved, occupied by homestead settlers or pre-empted or otherwise disposed of, it granted other lands in lieu thereof to be selected by the company, under the direction of the Secretary of the Interior, in alternate sections, designated by odd numbers, not more than ten miles beyond the limits of the said alternate sections first mentioned. 13 U. S. Stat. ch. 217, § 3, p. 267. Lying beyond the grant, but within the indemnity limit, was section thirteen (13,) T. 147, R. 55, in Steele county in Dakota Territory. The Railroad Company selected this section as indemnity land not later than April 9, 1883, and a patent for this and other lands was issued April 25, 1891, by the United States to the Railroad Company. The patent contained the following recital: "And whereas said tracts have been selected under the Act aforesaid, by Charles B. Lanborn, the duly-authorized land agent of said Northern Pacific Railroad Company, as shown by his original list of selections certified under date of March 19, 1883, and April 9, 1883, by the Register and Receiver at Fargo, State of Dakota." When the selection was approved by the Secretary of the Interior did not appear from the proofs in this action. On September 10, 1879, the Railroad Company conveyed this section of land by warranty deed to F. Paine, and he on July 7, 1880, conveyed it by warranty deed to Charles F. Kindred. He conveyed it on October 30, 1880, with warranty to the defendant Patrick H. Carney.

On February 28, 1882, Carney conveyed this section of land to the plaintiffs, by warranty deed, in which he covenanted that he was then and there well seised in fee of the land, and that he had good right to sell and convey the same; that it was free from incum-

brance, and that plaintiffs should quietly enjoy and possess the same, and that he would warrant and defend the title thereto. The plaintiffs at the same time paid him $2,480 in cash, and gave him a mortgage on the land to secure the payment by them of $2,000 more, with interest. The mortgage contained covenants similar to those in the deed. They failed to pay, and on July 12, 1886, defendant foreclosed the mortgage under a power of sale contained therein, and on that day bid in the land for the amount then due. No redemption was made. The land was during all this time, vacant and unoccupied.

This action was commenced November 2, 1887, against Carney upon the covenant of seisin contained in his deed to the plaintiffs. They demanded judgment against him for $2,480 and interest thereon from the date of his deed to them. The action was tried before the court without a jury. Findings were filed February 29, 1892, by which judgment was directed to be entered that plaintiffs take nothing by their action. Judgment was entered accordingly and for costs, and plaintiffs appeal.

In a memorandum filed with the findings, the trial court said:

"The title did not pass from the United States to the Northern Pacific Railroad Company until the land had been selected by the Railroad Company, and such selection had been approved by the Secretary of the Interior. *Musser* v. *McRae*, 38 Minn. 409, and 44 Minn. 343; *United States* v. *Missouri, Kan. & Tex. Ry. Co.*, 141 U. S. 358, 384. The patent is evidence of the approval of the Secretary of the Interior. If that approval shall be taken in this case to relate back to the date of selection, then the defendant's title became perfect long prior to the beginning of this action. In that case plaintiffs would be entitled to no more than nominal damages, and I do not understand that to be insisted upon. *Burke* v. *Beveridge*, 15 Minn. 205, (Gil. 160;). *Mecklem* v. *Blake*, 99 Am. Dec. p. 77, note. But if defendant's title did not, as to plaintiffs, become perfect until the date of the patent, which was after this action was commenced, then plaintiffs should not recover because before this action they had, by the foreclosure, parted with all their interest in the land and every

right of action concerning it.    *Kimball* v. *Bryant*, 25 Minn. 496;
*Bennett* v. *Irwin*, 3 Johns. 363; *Bank of Utica* v. *Mersereau*, 3 Barb.
Ch. 528.

*Cyrus J. Thompson* and *Charles J. Berryhill*, for appellants.

The title was in the United States when the deed to plaintiffs was
executed, and the mortgage for part of the purchase money was with-
out consideration because nothing was conveyed.    There was no *quid
pro quo* for the mortgage any more than for the hand money.    The
Northern Pacific Land Grant Act was passed July 2, 1864.    (13
Stats. at Large, 365.)    By § 3 "place" lands were granted.    It also
provided for "lieu" lands to be selected by the company under the di-
rection of the Secretary of the Interior not more than ten miles dis-
tant from the "place" limit.    The subsequent title came not only aft-
er the execution of the deed, but also after this action was actually
brought in the lower court.    If the authorities establish the proposi-
tion that the title by virtue of the patent did not inure to plaintiffs,
then we are entitled to $2,480 damages.    We insist that the title
could not and did not inure, except by plaintiffs' consent, and they
certainly have not in any manner consented to take the after-acquired
title.    When the deed was given, the lands were vacant, and they
have so remained up to this date.    That of itself makes the distinc-
tion we contend for, without more.    *Abbott* v. *Allen,* 14 John. 248;
*Burton* v. *Reeds*, 20 Ind. 87; *Blanchard* v. *Ellis*, 1 Gray, 195 ; *Tucker*
v. *Clark*, 2 Sandf. Ch. 96 ; *Bingham* v. *Weiderwax*, 1 N. Y. 509 ; 2
Wash. Real Prop. 673; *Woods* v. *North*, 6 Humph. 313; *Nichol* v.
*Alexander*, 28 Wis. 118; *McInnis* v. *Lyman*, 62 Wis. 191; Rawle,
Cov. (2d Ed.) 268; Bigelow, Estop. (4th Ed.) 381, 382, 429; 2
Smith's Lead. Cas. 691; Jones, Mortg. § 1504.

The covenants in the mortgage do not estop the plaintiffs from
availing themselves of any indemnity or relief to which they would
otherwise be entitled by virtue of the covenants of the defendant in
this deed to them.    Rawle, Cov. 457; *Hubbard* v. *Norton*, 10 Conn.
433; *Hardy* v. *Nelson*, 27 Me. 525; *Lot* v. *Thomas*, 2 N. J. Law,
386; *Sumner* v. *Barnard*, 12 Met. 459; *Haynes* v. *Stevens*, 11 N. H.
28; *Brown* v. *Staples*, 28 Me. 497.

*C. D. & Thomas D. O'Brien*, for respondent, submitted on the memorandum of the trial court.

DICKINSON, J.  Action for breach of covenant of seisin contained in a deed of conveyance executed by the defendant to the plaintiffs in February, 1882.  Whatever title the defendant had to convey, and whatever title may have subsequently inured to the plaintiffs as his grantees, was derived from the United States through the Northern Pacific Railroad Company; the land being within the indemnity limit of the land grant to that corporation.  The chain of conveyances to which attention is directed is as follows:

In 1879 the Northern Pacific Railroad Company conveyed to Paine, and in 1880 Paine conveyed to Kindred, and the latter to the defendant, Carney; all such conveyances being by warranty deed.  February 28, 1882, Carney conveyed, by warranty deed containing a covenant of seisin, to the plaintiffs.  This action is for a breach of the covenant contained in that deed.  Of the purchase price, $4,480, there was paid the sum of $2,480.  On the same day the plaintiffs executed to their grantor, the defendant, a mortgage on the same land to secure the unpaid part of the purchase price.  Subsequently, and in the same year, 1882, the plaintiffs conveyed to other parties, who in 1887, prior to the commencement of this action, reconveyed to the plaintiffs.  In July, 1886, the mortgage given by the plaintiffs was foreclosed under the power therein contained, the defendant purchasing the property at the foreclosure sale, and no redemption was made therefrom.

The premises have always been vacant and unoccupied.  This action was commenced in November, 1887.  In April, 1891, the United States executed a patent conveying the land to the Northern Pacific Railroad Company, in which patent it was recited that the land had been selected by an agent of the railroad company, "as shown by his original list of selections, certified under date of March 19, 1883, and April 9, 1883, by the register and receiver at Fargo, State of Dakota."  It does not otherwise appear when this selection was approved by the secretary of the interior.

The selection of indemnity lands, which was to be made "under
v.52M.—26

the direction of the secretary of the interior." (13 St. at Large, p. 367, § 3,) did not become effectual, nor did the title pass from the United States, at least until the selection was approved, or in some way sanctioned by the secretary of the interior; and hence, so far as appears in this case, not until the issuing of the patent, in April, 1891, which evidenced such approval. *Musser* v. *McRae*, 38 Minn. 409, (38 N. W. Rep. 103;) Id., 44 Minn. 343, (46 N. W. Rep. 673;) *United States* v. *Missouri, K. & T. Ry. Co.*, 141 U. S. 358, (12 Sup. Ct. Rep. 13.) Hence it will be observed that at the time of the conveyance from the defendant to the plaintiffs, February, 1882, the title was still in the United States, and that it was not until some nine years thereafter, nor until more than three years after the commencement of this action, that the title was conveyed to the railroad company. Not until then could such title have been transmitted, or have inured by operation of law, to the grantees of that company, immediate or remote. In other words, the covenant of seisin appears to have been wholly broken when it was made, so that the plaintiffs had a right of action to recover the purchase money paid; and not until after this action was commenced was the defendant in a position, so far as appears, to invoke the application of the principle that a title acquired by a grantor after a conveyance by him, with covenants, inures to the benefit of his covenantee. The question here presented is whether that principle is to be applied, under such circumstances, to defeat a recovery on the covenant broken. Otherwise expressed, the question is whether the title acquired during the pendency of the action for breach of covenant was actually transferred to and vested in the plaintiffs by operation of law, so that they were compelled to and did actually acquire it, even without their consent and against their will. If so, that fact would probably be available to the defendant in defense of such an action, or at least in mitigation of damages.

Upon the question thus presented, the law cannot be said to be settled. In support, wholly or to some extent, of the proposition that a title acquired by the grantor subsequent to the conveyance by him inures by operation of law to his grantee, even though he is unwilling then to accept it, and hence will mitigate the damages recover-

able for breach of covenant, or wholly defeat an action for damages, according to the circumstances of the case, may be cited *Baxter* v. *Bradbury*, 20 Me. 260; *King* v. *Gilson's Adm'x*, 32 Ill. 348; *Reese* v. *Smith*, 12 Mo. 344; *Morrison* v. *Underwood*, 20 N. H. 369; *Knowles* v. *Kennedy*, 82 Pa. St. 445; *Farmers' Bank* v. *Glenn*, 68 N. C. 35; *Cornell* v. *Jackson*, 3 Cush. 506; *Boulter* v. *Hamilton*, 15 U. C. C. P. 125, citing *Doe* ——— v. *Webster*, 2 U. C. Q. B. 225. See, also, *Knight* v. *Thayer*, 125 Mass. 25. In some of these cases, however, it may be noticed that the plaintiff was in possession of the granted lands under his deed.

On the contrary, the doctrine is well supported by authority that a grantee to whom no title passed by the deed of conveyance, who acquired no possession, and no right of possession, may recover the purchase money paid, with interest, in an action for a breach of the covenant of seisin, even though the grantor may have acquired a title during the pendency of such an action, or, perhaps, even prior to its commencement; that the grantee is not to be compelled to accept the after-acquired title in satisfaction of the already broken covenant of seisin, or in mitigation of damages recoverable for the breach. *Blanchard* v. *Ellis*, 1 Gray, 195; *Tucker* v. *Clark*, 2 Sandf. Ch. 96; *Bingham* v. *Weiderwax*, 1 N. Y. 509; *Nichol* v. *Alexander*, 28 Wis. 118; *McInnis* v. *Lyman*, 62 Wis. 191, (22 N. W. Rep. 405;) *Burton* v. *Reeds*, 20 Ind. 87, 93; Rawle, Cov. §§ 179–182, 256–258, 264, 265; Bigelow, Estop. 440; Sedg. & W. Tr. Title Land, § 850. While in some of the cases last cited there had been an eviction of the covenantee after he had been in possession, that would not distinguish such cases from that now before us. The inability of the plaintiffs to enter into possession of this vacant land without committing a trespass, by reason of the paramount title being in another, would have the same effect, as respects the right of action for a breach of the covenants contained in the deed, as would an eviction if possession had been acquired. *Fritz* v. *Pusey*, 31 Minn. 368, (18 N. W. Rep. 94;) *Shattuck* v. *Lamb*, 65 N. Y. 499.

To our minds the authorities last cited present the view of the law most consistent with reason and with familiar legal principles, as well as the rule most conducive to justice, in its practical application.

It is certain, if the defendant's deed conveyed no title, that the plaintiffs had a legal right, when this action was commenced, to recover the purchase price paid for a title. They elected to pursue that remedy, and still insist upon the legal right. We cannot understand how that perfect, absolute legal right of action, and especially after an action has been already instituted, is defeated; how the right, at the election of the grantee, to enforce his action for the breach of the covenant is taken away or lost by any proper application of the principle that an after-acquired title inures to the benefit of the grantee, by force of his covenants, and upon principles embraced within the general doctrine of estoppel. We do not concur in the proposition that the principle just referred to is effectual to actually transfer and vest in the covenantee an estate acquired by the covenantor subsequent to his conveyance. See, in addition to the authorities above cited, *Buckingham* v. *Hanna,* 2 Ohio St. 551; *Burtners* v. *Keran,* 24 Grat. 42, 67; *Chew* v. *Barnet,* 11 Serg. & R. 389, 391. Indeed, that the estate is thus actually transferred to the covenantee, without resting in the covenantor, to whom the after-acquired title is in terms conveyed, is inconsistent with the idea of an estoppel binding the latter and those in privity with him; and yet it is not to be doubted that the doctrine which we are considering really rests upon the ground of estoppel. It is founded on equitable principles, and affords to a grantee with covenants a remedy of an equitable nature with respect to a title acquired by the grantor after he had assumed to convey the same; and doubtless courts of law, at this day, recognize and apply the principle of estoppel, in such cases, as courts of equity are wont to do. They will treat the after-acquired title as though it had been conveyed, when equity would decree that a conveyance be made. Rawle, Cov. § 258. But this equitable right is one in favor of the *covenantee,* resting upon the estoppel of the covenantor to assert, as against him, a title to the property. If the grantee acquires nothing by the deed to him, and has and asserts a legal cause of action for covenant broken, no principle of estoppel operates against *him,* to compel him, perhaps years afterwards, as in this case, to accept, in satisfaction of that legal cause of action, wholly or partially, a title which his covenantor

may then procure. The latter, whose covenant has been wholly broken, has no right to elect, as against the covenantee, and to his prejudice, whether he will respond in damages for the breach by repaying the purchase money, or buy in the paramount title, when the value of the property may have greatly depreciated, and compel the plaintiff to accept that title. The right of election is, and should be, with the other party. He has the *benefit* of the estoppel, but it is not to be imposed upon him as a *burden*, at the will of the party who alone is subject to the estoppel. He may elect to pursue the action at law, and recover the consideration paid for a title which was not conveyed to him. At least, he may so elect, as the plaintiffs did in this case, at any time before the acquisition of the title by the covenantor.

The case of *Burke* v. *Beveridge*, 15 Minn. 205, (Gil. 160,) did not require a consideration of the question now before us. The decision necessarily rested upon another ground; and while, in the opinion of the court, *Baxter* v. *Bradbury, supra,* is referred to with approval, we do not accept the dictum as expressing the law on this subject.

The respondent adopts the memorandum or opinion of the learned judge who tried the cause, in place of a brief, for the purposes of this appeal. We infer that the respondent relies upon the proposition, upon which the court based its decision, that, by reason of the foreclosure of the purchase-money mortgage, the purchase by the defendant at the foreclosure sale, and the nonredemption therefrom, the plaintiffs' right of action for breach of the covenant of seisin has been extinguished; that it passed from the plaintiffs back to the defendant, the vendor, when by the foreclosure the plaintiffs were divested, and the defendant reinvested, with whatever estate or interest was conveyed by the deed. *Kimball* v. *Bryant*, 25 Minn. 496, is cited in this connection. This contention must rest upon the familiar legal proposition that a right of action by a grantee upon covenants which run with the land does not remain in him after he has transferred the estate, but passes with it. But we do not deem the proposition applicable to the case here presented.

It will be kept in mind that the mortgage was executed by the vendees to the vendor contemporaneously with the conveyance made

to the former by the latter, and for the purpose, merely, of securing the payment of a part of the purchase price.

We may state, without discussing the proposition, that the vendees were not estopped or precluded, by the covenants in their mortgage to the vendor, from recovering for a breach of the similar covenants contained in the deed of the latter to them. *Sumner* v. *Barnard*, 12 Metc. 459; *Brown* v. *Staples*, 28 Me. 497; *Smith* v. *Cannell*, 32 Me. 123; *Haynes* v. *Stevens*, 11 N. H. 28; *Connor* v. *Eddy*, 25 Mo. 72; Rawle, Cov. (5th Ed.) § 266.

In *Kimball* v. *Bryant, supra*, it was considered that, if the grantee under a deed of conveyance with a covenant of seisin conveys the same land to another, it may be presumed, "unless there be something to show a contrary intention," that, although the covenant was broken when it was given, he intends to confer on his grantee the benefit of the covenant, so far as necessary for his protection; to transfer his right to sue for the breach, so far as his grantee sustains injury by reason of it. But in a case like that under consideration the circumstances do "show a contrary intention." When the plaintiffs purchased the property, and took a deed with covenants embracing that of seisin, the presumption is irresistible and conclusive that the covenant was intended by both parties to the deed to be effectual as an obligatory assurance of title, giving an immediate right of action to the plaintiffs if the covenant should be found to have been broken. It would be unreasonable to suppose that when the purchasers gave back to their vendor a mortgage of the land, merely to secure the payment of a part of the purchase price, it was the intention of the parties that the purchasers should thereby divest themselves of, or relinquish, in favor of their covenantor, the benefits of the covenant, which in the very same transaction they had just taken from him for their own protection. It could not have been intended that the mortgage should, in effect, embrace and hypothecate to the vendor his own covenant assuring to his vendees the title which he then assumed to convey. As between the parties to such a transaction, the mortgage back to the vendor is to be deemed as reconveying, subject to the condition of defeasance, only such estate as is conveyed by the mortgagee to the mortgagors. It was not effectual,

as between these parties, to discharge the vendor from his obligation upon the covenant of seisin, which, being then broken, gave to the mortgagors an immediate right of action. The general rule that the right of action upon covenants which run with the land passes with the estate, and does not remain in a covenantee after the estate has been transferred, is not applicable. *Smith* v. *Cannell*, 32 Me. 123; *Haynes* v. *Stevens*, 11 N. H. 28; *Randall* v. *Lower*, 98 Ind. 255; Rawle, Cov. 266; Bigelow, Estop. (5th Ed.) 411–413.

Hence the plaintiffs, upon the case here presented, were entitled to recover for breach of covenant.

Judgment reversed.

(Opinion published 54 N. W. Rep. 89.)