## ·JONES v. GALLAGHER.

No. 5600. Opinion Filed January 11, 1916.

(154 Pac. 552.)

1.     **LOGS AND LOGGING—Sale of Timber—Construction of Contract—Covenant—"Grant, Bargain and Sell."** Section 639 of Mansfield's Digest of the Laws of Arkansas, which was put in force in the Indian Territory by the Act of Congress of February 19, 1903, c. 107, 32 Stat. 841. 10 Fed. Stat. Ann. 130, and which was in force at the time the contract involved herein was entered into, provides: "All lands, tenements and hereditaments may be aliened and possession thereof transferred by deed without livery of seisin, and the words 'grant, bargain and sell' shall be an express covenant to the grantee, his heirs and assigns, that the grantor is seised of an indefeasible estate in fee simple, free from incumbrance done or suffered from the grantor, except rents or services that may be expressly reserved by such deed, as also for the quiet enjoyment thereof against the grantor, his heirs and assigns, and from the claim or demand of all other persons whatsoever, unless limited by express words in such deed." Held, that this section, being in force at the time the conveyance involved herein was made, entered into and became a part of the agreement as fully, and to the same extent, as though the language had been written in the body of the contract. And held, further, that there being no express words of limitation embodied in the contract involved, the words "grant, bargain and sell," as used herein, import an express covenant by the grantor to the grantee, his heirs and assigns, that the

grantor is seised of an indefeasible estate in fee simple in said premises, and that he conveyed the same with full covenant of seisin.

2.   COVENANTS—Covenant of Warranty—Satisfaction by After-Acquired Title—Mitigation of Damages.   While it is true that if prior to eviction a grantor of land, with covenant of warranty, purchases an outstanding title, it inures to the benefit of the grantee, and operates as a discharge of the warranty; yet where the purchase of a paramount title is made by the grantor after eviction of the grantee, the grantor cannot compel the grantee to accept such after-acquired title in satisfaction of the covenant of warranty, nor in mitigation of damages for the breach thereof.

3.   SAME—Constructive Eviction—What Constitutes.   If a grantor assumes to convey with full covenants of warranty unoccupied lands to which he has no title, there is at once a constructive eviction of the grantee which entitles him to the same remedies that he would be entitled to had he been turned out of the actual possession of the land by legal process, and if in such case the grantor subsequently obtains a good title, while he will be estopped to deny the title of his grantee, yet he cannot compel the latter, after his eviction by title paramount, to accept such after-acquired title in satisfaction of the covenants in his deed, nor in mitigation of damages for the breach thereof.

(Syllabus by Robberts, C.)

*Error from Superior Court, Pittsburg County;*
*W. C. Leidtke, Judge.*

Action by J. H. Gallagher against James E. Jones. Judgment for defendant for less than claimed, and he brings error.   Reversed and remanded for new trial.

*Arnote & Rogers,* for plaintiff in error.

*Robert N. McMillan,* for defendant in error.

Opinion by ROBBERTS, C.   This case comes from the superior court of Pittsburg county. The parties herein will be designated plaintiff and defendant, the same as below.

The action was commenced on the 10th day of June, 1910, by J. H. Gallagher, against J. E. Jones, to recover an alleged balance of $500 on a note of $1,500, with in-

terest at 8 per cent. per annum from the 23d day of April, 1907; and an open account for $13.06, with interest at 6 per cent. per annum from the 5th day of January, 1908. The defendant filed answer and cross-petition, in substance: (a) Admitting the execution of the note, and also the account of plaintiff; (b) alleging that the note involved, with two others, one for $1,500, and one for $701.83, similar to the ones sued on. except as to time of payment, were given by defendant to plaintiff as part consideration for 4,170 acres of timber, which plaintiff sold to defendant for the consideration of $15,000, being located in sections 15 to 35, inclusive, in township 7 N., range 22 E., in Latimer and Haskell counties, Okla. The answer further charged, in substance: (c) That plaintiff did not have title to about 1,500 acres of the timber included in sale contract; (d) that on about 60 acres of said timber, plaintiff did not have length of time to remove it, as provided in contract; (e) that plaintiff sold and removed a portion of the timber included in the contract of sale to defendant. It then alleged that the plaintiff did not have title to said 1,500 acres of said land, and that certain Indian minors, naming them, and the Choctaw and Chickasaw Nations owned the land, and evicted defendant, to his damage in the sum of $6,064.10; (f) that plaintiff did not have muniments of title to another portion of the timber on land described in contract of sale, and agreed if he did not secure good title to said last-mentioned timber, that he would give defendant credit of $1,500 on notes, and thereafter, in the spring of 1909, an agreement was made in writing in which plaintiff furnished to defendant spurious title to certain timber on land included in said contract, allotted to Mollie Williams, an Indian minor, as being a good title, but that plaintiff

did not have any title to said land; that said land was a part of the consideration of said agreement between plaintiff and defendant, and that plaintiff, not having title to the Mollie Williams land and having represented to defendant that he had good title to said land, defendant was damaged in the sum of $398.20.

The second paragraph of this answer was a claim for damages by reason of false and fraudulent representations made by plaintiff to defendant as to the quality of timber, alleging that said representations were known to be false by plaintiff, and were made for the purpose of inducing defendant to enter into the contract, and to defraud the defendant, for which defendant claimed damages in the sum of about $8,000.

The contract of sale of timber contained the following conditions:

"Know all men by these presents: That I, J. H. Gallagher, of Lodi, Choctaw Nation, Indian Territory, in the Central District of the United States Court of the Indian Territory, party of the first part, being owner of the land and timber hereinafter described, under due and proper allotments of the parties hereinafter described, and James E. Jones, party of the second part. Witnesseth: That the party of the first part, for and in consideration of the sum of $15,000, receipt whereof is hereby acknowledged, first parties have granted, bargained, sold, conveyed, and by these presents do hereby grant, bargain, sell, and convey and confirm unto the said party of the second part, his heirs and assigns, all of the following timber hereinafter described."

This contract is dated April 23, 1907. Then follows the description of the land upon which the timber is located; after the description is the usual tenure and warranty clause of a deed, the warranting clause being:

"Will warrant and defend the title to said timber and all rights herein mentioned against all lawful claims and demands whatsoever."

It is then provided that the defendant shall remove the timber within ten years, but upon payment of an additional sum equal to 10 per cent. of the gross amount paid, he shall have such additional time as shall be necessary to remove the timber, and that he shall have the right of ingress and egress upon the lands for the purpose of removing the timber, and that plaintiff bound himself that the timber conveyed should not be damaged, touched, or interfered with, and that he would protect the same against any and all trespassers and other persons, including persons to whom the land might be conveyed, and then follows a description of other personal property included in the contract.

The contract then stated that Gallagher had not furnished Jones allotments and filings on certain parcels of land, and that Gallagher agreed to furnish him such filings and timber contracts properly recorded, and that if he failed to do so he should credit Jones with $1,500 on the amount due on the contract; then followed a description of the land, which description included the N. ½ of the S. E. ¼ and the S. E. ¼ of the S. E. ¼ of section 28, township 7 N., range 22 E. This land was the allotment of Mollie Williams. The contract was signed by J. H. Gallagher and wife, Della Gallagher, and duly acknowledged before a notary public.

The contract of settlement as to the Mollie Williams land was not dated, but evidence shows it was made in the spring of 1909. This contract recited provisions of the original contract of sale in regard to which plaintiff

had failed to furnish evidences of title to certain timber, and that if he failed to furnish evidence of title, a credit of $1,500 was to be given to defendant on his notes, and then provided that plaintiff, having failed to deliver certain filings and timber contracts for a portion of the land, the defendant should have credit for $1,000 on his notes given as part payment for the timber, and the note sued on in this action was credited with $1,000, as of the date of the note. The contract was signed by J. H. Gallagher and James E. Jones.

November 23, 1912, plaintiff filed his reply, in which he denied all allegations of the answer, except those expressly admitted, admitting the execution of the two other notes, one for $1,500, and the other for $701.83, and that they were given as part of the purchase price of the timber mentioned in the answer, and admitting the contract of sale of timber and contract of settlement.

The sixth paragraph of the reply set forth that plaintiff had perfected his title to the timber by purchasing the superior outstanding title to 1,160 acres of land, on which he had no title to the timber. This included the allotments of John Jackson, Winnie Jackson, and Douglas Jefferson, Indian minors, and the Cyrus Lewis 60 acres, to which plaintiff had only two years within which to remove timber, and the land of Joshua Johnson, an Indian freedman. These titles were secured during September, October, and November, 1912.

On November 26, 1912, defendant filed demurrer to the sixth paragraph of plaintiff's reply, on the ground that the same did not state facts sufficient to constitute a defense to the answer and cross-petition. On the same date demurrer was overruled, to which ruling defendant

excepted.  The evidence shows that plaintiff had no title to the timber on 1,510 acres of the land included in the contract, being land allotted to John Jackson, Winnie Jackson, Douglas Jefferson, minors, and Joshua Johnson and Cyrus Lewis.  The court instructed the jury that plaintiff did not have title to said 1,510 acres of timber. The court also instructed the jury that the plaintiff had perfected title in himself to 1,160 acres of the said 1,510 acres of the land, and that the perfected title inured to the benefit of defendant.

Plaintiff offered in evidence orders confirming the sale of this land from John Jackson, Winnie Jackson, and Douglas Jefferson, together with the deeds of their guardians; also deeds of Joshua Johnson and Cyrus Lewis, all of which deeds and orders for the 1,160 acres of timber land above mentioned were admitted over the objection and exception of defendant.  These deeds are dated November 11, 1912.  None of these deeds allowed to exceed five years within which to remove the timber, and one of them was limited to two years within which to remove the timber.  The evidence shows that the defendant was evicted from 1,120 acres of the 1,160 acres of land as soon as he commenced to remove the timber, which was in 1907 and 1908, some four or five years before plaintiff secured title to it, being all the land to which plaintiff acquired title in 1912, except the 40 acres of Joshua Johnson, freedman.

The jury was instructed to find for the plaintiff the amount of the note and the account sued on, including the interest, and then strike a balance between the amount of this note and account and the damages found for defendant, if any, and return a verdict for such balance, and the jury returned a verdict in favor of defendant in

the sum of $1,210.19. This indicates that the jury found damages for the defendant in the sum of about $2,000. There were no special findings on these questions of damages, and it is impossible to determine upon what feature of the case damages were assessed by the jury. There were some special findings by the jury as to correction of errors in the description of the land in the contract of sale, which, however, have no bearing upon the questions raised by the assignments of error. Judgment was then rendered by the court upon the verdict of the jury in favor of the defendant in the sum of $1,210.19, and for correction of the contract of sale in accordance with the special findings of the jury. Motion for new trial was overruled, exceptions saved, and defendant, evidently being of the opinion that the judgment was too small, brings error.

The plaintiff contends that there was no covenant of seisin in the contract of sale, and that because thereof he did not become liable for failure of title. We cannot give our approval to that contention. The contract provides that:

"J. H. Gallagher [plaintiff], being the owner of said land and timber, * * * in consideration of the sum of $15,000, the receipt whereof is acknowledged, has granted, bargained, sold, conveyed, and by these presents does hereby grant, bargain, sell, convey, and confirm unto J. E. Jones [defendant], his heirs and assigns, all the following described lands."

Section 639 of Mansfield's Digest of the Laws of Arkansas, which was put in force in the Indian Territory by the Act of Congress of February 19, 1903, c. 107, 32 Stat. 841, 10 Fed. Stat. Ann. 130, and which was in force at the time this contract was entered into, is as follows:

639. "All lands, tenements and hereditaments may be aliened and possession thereof transferred by deed without livery of seisin, and the words "grant, bargain and sell' shall be an express covenant to the grantee, his heirs and assigns, that the grantor is seised of an indefeasible estate in fee simple, free from incumbrance done or suffered from the grantor, except rents or services that may be expressly reserved by such deed, as also for the quiet enjoyment thereof against the grantor, his heirs and assigns, and from the claim or demand of all other persons whatsoever, unless limited by express words in such deed."

This section, being in force at the time, entered into and became a part of the agreement as fully, and to the same extent, as though the language had been written in the body of the contract. It provides that the words "grant, bargain, and sell" shall be an express covenant of seisin, "unless limited by express words in the contract." There are no words of limitation in the contract. The statute had been construed by the Supreme Court of Arkansas long before it was put in force in the Indian Territory. As early as 8 Ark. in *Bird v. Smith,* at page 368, that court said:

"The words, 'grant, bargain, and sell,' which are used in the deed declared upon, are, by the statute made an express covenant to the grantee, his heirs and assigns, that the grantor is seised of an indefeasible estate in fee simple, * * * unless limited by express words in such deed."

As stated before, the contract of sale contained no express words of limitation, and therefore must be held to contain full covenant of seisin.

The defendant further contends that the plaintiff could not, after the defendant was evicted from the land,

secure title thereto and require him to accept it either in satisfaction of plaintiff's contract of warranty with said defendant, or in mitigation of damages, by reason of breach of said contract.

This brings us squarely to the question whether a grantor, conveying with covenant of warranty, and title failing, can, after eviction of the grantee, purchase the outstanding paramount title, and thereby defeat the grantee's right to recover damages for failure of title, or avail himself of such after-acquired title in mitigation of damages. Upon this proposition the court instructed the jury as follows:

"2. You are instructed as a matter of law: That the plaintiff herein at the time of the conveyance or attempted conveyance of the lands mentioned in the contract and deed introduced in evidence herein did not have the title to 1,510 acres of said land, and that there was outstanding against said land better and paramount title in different individuals. That of said 1,510 acres the title to 1,160 acres thereof has been perfected in the plaintiff herein, which said perfecting of the title in the plaintiff herein would inure to the benefit of this defendant, and this leaves a balance of 350 acres of said land to which the title has not been perfected. It is necessary that you keep in mind these two amounts of land in order that you may understand thoroughly the instructions of the court herein given.

"3. You are instructed that a failure of title alone is not sufficient in law to enable the defendant herein to recover on the breach of warranty, alleged by him in his petition, but in order to recover damages on account of breach of warranty of title it is necessary that the defendant go further and show that he has been evicted; that is, that he has been deprived of possession or enjoyment of said premises by the party holding the paramount title thereto. To constitute an eviction it is not

necessary that the defendant herein should have been compelled by lawful process or by force to quit said premises or refrain from cutting timber thereon, but it is only necessary that he was notified by the person holding the paramount title of such person's claims to said land and that thereupon he, recognizing said claim, the defendant, voluntarily or otherwise, surrendered the possession of said timber to the parties so claiming said title thereto, or refrained from going upon said land and removing the timber therefrom."

"5. You are instructed that if you should find from a preponderance of the evidence in this case that the defendant has been evicted from the 1,160 acres of timber land, or any part thereof, then it will become necessary for you to consider the question of the subsequent perfecting of the title to said 1,160 acres of timber land in the plaintiff. However, should you find from a preponderance of the evidence that there was an eviction of the defendant from all of said 1,160 acres of timber land, or any part thereof, then as to that part of said 1,160 acres of timber land from which there was an eviction, it will be necessary for you to consider the fact of the perfecting of the title to said lands in the plaintiff, in mitigation of the defendant's damages, if any, by reason of the failure of title to said timber lands, and defendant's subsequent eviction therefrom, and you are instructed that in the event you should find from a preponderance of the evidence that the defendant was evicted from said 1,160 acres of land, or any part thereof, then the defendant would be entitled to recover against the plaintiff such damages as you may find him entitled to receive under the instructions of the court herein given you relating to damages in this action."

"11. If you should find the defendant entitled to recover damages on account of the 1,160 acres of land heretofore mentioned in these instructions, in determining his said damages, you should take into consideration all of the facts and circumstances relating thereto as disclosed

by the evidence in this case, taking into consideration the length of time defendant was given by the contract between plaintiff and defendant to remove said timber, and the length of time given by the instruments since acquired by the plaintiff to remove said timber, and award the defendant such damages, if any, as he may have suffered by reason of his being delayed in removing said timber or of his inability to remove the same within the time provided in said new instruments of conveyance."

It is plain to be seen from these instructions that the trial court took the position that a grantor, conveying with covenant of warranty, where title fails, can, after eviction of the grantee, purchase the outstanding title, and, at least, avail himself of such after-acquired title in mitigation of damages. That is evidently the theory upon which the case was tried in the lower court.

We cannot give our assent to this doctrine. The evidence is conclusive that defendant was evicted from about 1,500 acres of the timber involved long before this suit was commenced. He filed his answer and cross-petition claiming damages for failure of title, or breach of contract, on the 21st day of January, 1911, and the plaintiff procured the outstanding title to 1,160 acres of the timber, in September, 1912. Upon this proposition, in 11 Cyc. 1137, the law is laid down as follows:

"If, prior to the eviction of the grantee, a grantor of land with covenant of warranty purchases an outstanding title, it inures to his own benefit in discharge of his covenant; but where a grantor purchases a paramount title after the eviction of his grantee, such title does not inure to his grantee by way of estoppel without his consent so as to defeat his right to sue for breach of covenant to recover damages, nor can the grantor avail himself of it in mitigation of damages."

In *Blanchard v. Ellis,* 1 Gray (67 Mass.) 195, 61 Am. Dec. 417, the court says:

"Supposing it to be well settled that if a new title comes to the grantor before the eviction of his grantee it would inure to the grantee, and not deciding, because the case does not require it, whether the grantee, even after eviction, might elect to take such new title, and the grantor be estopped to deny it, we place the decision of this case on this precise ground, that where a deed of land has been made with covenants of warranty, and the grantee has been wholly evicted from the premises by the title paramount, the grantor cannot, after such entire eviction of the grantee, purchase the title paramount and compel the grantee to take the same against his will, either in satisfaction of covenant against incumbrances, or in mitigation of damages for the breach of it."

The Supreme Court of Mississippi, in *Southern Plantation Co. v. Kennedy Heading Co.,* 104 Miss. 131, 61 South. 166, states the rule as follows:

"It is true that if, prior to eviction, a grantor of land with a covenant of warranty purchases an outstanding title, it inures to the benefit of the grantee and operates as a discharge of the warranty; but where the purchase of a paramount title is made by the grantor after the eviction of the grantee, or after suit begun, when the grantee has the right of instituting a suit without actual eviction he cannot compel the grantee to accept such after-acquired title in satisfaction of the covenant of warranty, or in mitigation of damages for the breach thereof."

In *McInnis v. Lyman,* 62 Wis. 191, 22 N. W. 405, it is said:

"If a grantor assumes to convey with full covenants of warranty unoccupied lands to which he has no title, there is at once a constructive eviction of the grantee which entitles him to the same remedies that he would be

entitled to had he been turned out of the actual possession of the land by legal process. If, in such a case, the grantor subsequently obtains a good title, while he will be estopped to deny the title of his grantee, yet he cannot compel the latter, after his eviction by title paramount, to accept such after-acquired title in satisfaction of the covenants in his deed or in mitigation of damages for the breach thereof."

The Supreme Court of Minnesota, in *Resser v. Carney*, 52 Minn. 397, 54 N. W. 89, use the following language:

"A purchaser of vacant real estate, receiving a deed thereof, with a covenant of seisin, from one who has no title, the covenant being wholly broken, is not compelled, at least after he has commenced an action for the breach of the covenant, for the recovery of the purchase money paid, to accept a title which his grantor may then acquire."

In Washburn on Real Estate (6th Ed.), sec. 1929, we find this rule:

"The cases are numerous where courts have held that if one without any title makes a deed of land with covenants of warranty, and afterwards acquires a title to the same, it will inure to the grantee and covenantee by way of estoppel. And in several states the rule is recognized by statute. The effect is that the title acquired by the grantor who has conveyed with warranty inures, *eo instanti* that he gains the title, to his grantee, and vests in him, or to the grantee of such grantee if with like covenants. But if, before the covenantor acquires a title, the covenantee sue for a breach of the covenant of seisin, it seems that he could not defeat that action by purchasing in the title and tendering it to his covenantee, if the latter refuse to accept it."

The foregoing authorities fully support the contention of defendant that where a grantee under a warranty

deed has been evicted by title paramount, the grantor cannot, by purchasing such outstanding title, compel the grantee to accept the same, either in satisfaction of the covenant, or in mitigation of damages for a breach of it. The instructions of the trial court upon this proposition were erroneous, and clearly prejudicial to the defendant. Counsel for plaintiff cite several authorities to support their contention upon that question, but they are not in point. The text cited by counsel, 11 Cyc. 1159, does not include the question of eviction before purchase of paramount title. The same may be said of the two Kansas cases, *Looney v. Reeves*, 5 Kan. App. 279, 48 Pac. 606, and *Kimball v. Bell*, 49 Kan. 173, 30 Pac. 240.

Another controlling question involved herein is the fact that the subsequently acquired title tendered by plaintiff does not comply with the original agreement. It will be remembered that this was a sale of the timber, and in the first contract the defendant was granted ten years in which to remove it from the land, while in the after-acquired title the defendant was allowed only five years, and as to part of the land only two years. The court would not, and could not, undertake to make a new contract, nor change the old one for the parties, nor would it attempt to compel the defendant to accept a contract which he had never made. As this case is likely to be tried again, we suggest that instruction No. 7 is not a correct statement of the law, under section 27, Mansfield's Digest, *supra*; it is as follows:

"You are instructed that the words of covenant used in the deed or instrument in question are what are known as a covenant of general warranty, the legal effect of which is that the plaintiff did not covenant that he was the true owner of the property conveyed, or that he was

the owner in fee simple with a right to convey it, but, only that he would protect and defend the defendant against the rightful claims of all persons thereafter asserted."

.We have hereinbefore fully gone into the question of covenant of seisin as contained in the deed contract, and under the law as laid down herein, that instruction is erroneous and prejudicial to the rights of the defendant.

For the several reasons herein expressed, this case should be reversed, and remanded for new trial in accordance herewith.

By the Court: It is so ordered.