## HUBBARD *against* NORTON and another.

*A* gave to *B* a deed of two parcels of land, describing them as bounded, by the lands of certain individuals named ; to which this clause was added— "reference to their deeds to be had for a more particular description." *B*, at the same time, gave to *A* a mortgage deed of the premises to secure about one half of the purchase money. Each of these deeds contained the usual covenants. In an action brought by *B* against *A* on the covenants of seisin and against incumbrances, claiming, that two of six lots embraced by the boundaries of one parcel, were not the property of *A*, at the time of the grant, and that the premises conveyed were then divided by highways running through and across them, it was held, I. that the deed of *A's* grantor to him of one parcel of the land conveyed, could not, in connexion with parol evidence, be resorted to, for explanation of *A's* deed to

*Litchfield,*
June, 1835.

Hubbard
*v.*
Norton.

*B,* the reference in the latter deed being, not to the deeds of *A's* grantors, but to those of the adjoining proprietors; 2. that the existence of the highways constituted a breach of warranty, and that evidence to shew, that they were open and notorious, and known to the plaintiff, at the execution of the deed, was inadmissible; 3. that the covenants in the mortgage deed from *B* to *A,* were no defence, because the covenants in suit did not run with the land, and those in the mortgage deed did not create an estoppel or constitute a bar to prevent circuity of action; 4. that on the covenant against incumbrances the plaintiff was entitled to recover in damages, the actual injury resulting to him from the highways, and on the covenant of seisin, such proportion of the whole consideration paid for the land as the value of that part to which the defendant had no title, bears to the value of the whole, with interest.

THIS was an action upon the covenants of seisin and against incumbrances in a deed.

The defendants, by their deed, dated the 6th of *March,* 1822, conveyed to the plaintiff " a farm or pieces of land, containing 200 acres, (more or less) bounded *North* on the *Bingham* farm, *West* on lands of *Andrew Frink, South* on land belonging to the heirs of *John Edmond, East* on land of *Jesse Smith, Miles Carter, H. Vandusen* and *E. H. Joscelin;* also, one other piece, called *Jack's Plain,* containing 50 acres, and bounded *South* on *Nathaniel Church, East* on highway, *North* on land of *Hamlin's* heirs, and *West* on *Daniel Brewster's* land; reference to their deeds to be had for a more particular description." This deed contained the usual covenants of seisin and warranty. The plaintiff executed to the defendants, simultaneously, a mortgage deed of the same lands, with like covenants, to secure about one half of the purchase money, the other half being paid.

It was admitted by the plaintiff, that the defendants, at the execution of their deed, owned the lots marked No. 1. 2. 3. and 4. as specified in a plan exhibited on the trial. The plaintiff claimed, that the lots marked No. 5. and 6. in the plan, were included in the deeds; and introduced evidence to prove, that lot No. 5. was bounded *East,* by *Jesse Smith's* land, and insisted, that by the words in the deed, " *East* on land of *Jesse Smith,*" the parties intended to include lot No. 5.; and that this lot, at the execution of the deed, was the property of *Bingham's* heirs. The plaintiff also introduced evidence to prove, that lot No. 6. was bounded *West* on *Frink's* land, and insisted, that by the words in the deed, " *West* on land of *Andrew*

*Litchfield,*
June, 1835.

Hubbard
*v.*
Norton.

*Frink,*" the parties intended to include so much of lot No. *6,* as lies *South* of a dotted line in the plan marked *x, y;* and that the whole of this lot was, at the execution of the deed, the property of *J. Whittlesey.* The plaintiff also introduced evidence to prove, that the farm, at the execution of the deed, was divided, by two highways, crossing each other obliquely, in the manner specified in the plan.

The defendants claimed, that the lot No. 5. on the *East* side of the farm, and lot No. 6. in the *North-West* corner, were not intended to be included in the deed; that some parts of the boundaries of the farm, by reason of its irregular form, were omitted in the deed; that by the words "*East* on land of *Jesse Smith,*" the parties intended to specify the *Eastern* boundary from certain points to certain points, as laid down in the plan; and that, by the words, "*West* on the land of *Andrew Frink,*" the parties intended to specify the *Western* boundary of the farm lying *South* of lot No. 6. To establish these points, the defendants produced in evidence the plan referred to, which was admitted to be correct; also a deed from *John T. Calhoun* to the defendants, dated the 6th of *April,* 1829, by which they derived title to said property, in which it was described as follows: " A certain farm containing 200 acres, being the same on which *Charles Lemon* now lives, bounded *North* on the *Bingham* farm, *West* on *Andrew Frink's* farm, *South* on lands belonging to the heirs of *John Edmund, East* on lands of *Jesse Smith, Miles Carter, H. Vandusen,* and *E. H. Joscelin;*" also, a deed, by which the defendants derived title to the second piece of land specified in their deed to the plaintiff. In connexion with these documents, the defendants offered evidence to prove, that the lots No. 1. 2. 3. and 4. composed, and were well known to compose, at the execution of their deed to plaintiff, the farm of *John T. Calhoun,* and were then in the occupation of *Charles Lemon;* that the *Bingham* farm did not extend *West* of the *North-West* corner of lot No. 1.; that lot No. 6. lies partly *West* of lot No. 1., and partly *West* of the *Bingham* farm, and adjoining both; that there was, at the execution of said deed, no fence running *Westerly* from the *North-West* corner of lot No. 1. from *x* to *y;* that there then was, and is still, a fence running *Southerly* from said corner in the line between lots No. 1. and 6.; that the plaintiff then knew, that lots No. 5. and 6. composed no part of

the farm, and were not intended to be included in the deed ; and the highways laid down in the plan, were then open and notorious, and their existence was well known by the plaintiff.

The plaintiff objected to every part of this evidence ; whereupon the cause was withdrawn from the jury, by consent of parties ; and the question as to the admissibility of such evidence, together with the question whether the facts, as claimed by the defendants, were a ground of defence, and also whether more than nominal damages, (if any) could be recovered, were reserved for the consideration of this court.

*L. Church* and *G. C. Woodruff*, for the plaintiff, contended, 1. That the parol evidence offered by the defendants, was inadmissible. It was in contravention of the general rule, that parol evidence is inadmissible to contradict, alter or vary a written instrument ; this being constituted, by the parties, as the true and appropriate expositor of their intentions. 8 *Stark. Ev.* 995, 6. to 1002. *Dunham* v. *Baker*, 2 *Day* 137. *Meres* v. *Ansell*, 3 *Wils.* 275, 6. *Preston* v. *Merceau*, 2 *Bla. Rep.* 1249. Parol evidence is inadmissible to supply a defect in the description of an estate. 3 *Stark. Ev.* 997. A court of law will not receive it even to correct *a mistake*. *Fitzhugh* v. *Runyon*, 8 *Johns. Rep.* 375. *Locke* v. *Whiting*, 10 *Pick.* 279. It is inadmissible to alter the *legal construction* of the words used. 3 *Stark. Ev.* 1012. Or to shew, that part of the premises included were not *intended* to be included. *Jackson* d. *Russell* & al. v. *Croy*, 12 *Johns. Rep.* 427. *Barret* v. *Barret*, 4 *Desaus.* 447. Lessee of *Snyder* & al. v. *Snyder*, 6 *Binn.* 483. Or to explain what land was intended to be conveyed, by a deed describing the land by courses and distances. *Hamilton's* lessee v. *Cawood*, 3 *Har.* & *McHen.* 437. Or to shew that the plaintiff knew of the incumbrances, and took the deed with an agreement that the grantor should not be charged in consequence. *Townsend* v. *Weld*, 8 *Mass. Rep.* 146.

2. That the covenants in the mortgage deed from the plaintiff to the defendants, furnished no defence. The covenants in question are both *personal* covenants, and do not run with the land. They are *choses in action*, and cannot be transferred. So that notwithstanding the reconveyance to the defendants, the plaintiff has a right of action, for the breach of

*Litchfield,*
*June 1835.*

Hubbard
*v.*
Norton.

*Litchfield,*
June, 1835.

Hubbard
*v.*
Norton.

these covenants, against the defendants. 1 *Sw. Dig.* 370. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 496. *Mitchell* v. *Warner,* 5 *Conn. Rep.* 497. *Lockwood* v. *Sturdevant,* 6 *Conn. Rep.* 374. 384. *Davis* v. *Lyman* & al. 6 *Conn. Rep.* 249. 255, 6. *Marston* v. *Hobbs,* 2 *Mass. Rep.* 433. 439. *Greenby* & al. v. *Wilcocks,* 2 *Johns. Rep.* 1. In the above cited case of *Davis* v. *Lyman,* the plaintiff sued his grantor on the covenant against incumbrances, (there being an outstanding mortgage) after the plaintiff had conveyed the land to a third person ; and it was held, that he might recover ; that the plaintiff's right of action was complete on receiving his deed ; and that the right was not assignable.

3. That there is no estoppel, in this case, to prevent the plaintiff's recovery. An estoppel is where a man is concluded, by his own act, to allege a fact—*e. g.* a man may not allege that which is contrary to his own deed. The plaintiff claims nothing against his deed to the defendants. He may admit their title derived from him to be valid ; for he may have acquired a title from the real owners, either before or after his deed to them—a fact perfectly consistent with his covenants. The plaintiff says, that he received no title from the defendants ; not that they received none from him. Besides, if the covenants in his mortgage deed from them are an estoppel, so they would be after the debt was paid in full, even before forfeiture ; and he never could recover of them on the covenants in their deed to him.

The plaintiff, then, has not either *assigned* his right ; nor is he *estopped* to claim damages.

4. That the amount of damages, to which the plaintiff is entitled, is to be ascertained thus : On the covenant of seisin, the rule is, the consideration and interest. *Marston* v. *Hobbs,* 2 *Mass. Rep.* 433. 440. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 495. 516. On the covenant against incumbrances, the rule is, that if the grantee has not extinguished them, he can recover but nominal damages, but if he has extinguished them, he will be entitled to recover the full amount which he has been compelled to pay. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 512. *Davis* v. *Lyman,* 6 *Conn. Rep.* 254, 5. and the authorities cited *ibid.* In accordance with the first mentioned rule, the plaintiff will be entitled to recover the value of the two pieces, at the time of the conveyance, or what the jury shall find he paid for

them. The incumbrances, to which the other rule is applicable, are public highways, which are permanent; and the jury must estimate the damage sustained by reason of them.

*W. W. Ellsworth* and *T. Smith,* for the defendants, contended, 1. That the deeds of the defendants' grantors, with the evidence offered in connexion with them, were admissible. The land conveyed may be described in various ways; and different modes of description may be used in the same deed. Where abuttals and a general designation are resorted to, both must be taken together. And in such case, if many of the abuttals are omitted and the land is irregular, the general designation is very important. In some instances, the court may overlook the abuttals entirely, and take the general words as their guide. *Worthington* v. *Hylyer* & al. 4 *Mass. Rep.* 196. *Doolittle* & ux. v. *Blakesley,* 4 *Day* 265. Hence, the defendants may shew, that lots No. 1. 2. 3. and 4. composed, and were well known to compose the farm of *J. T. Calhoun*; that *C. Lemon* occupied them as his tenant; and that the reverse was true as to lots No. 5. and 6.

The deed of *Calhoun* to the plaintiff constitutes a part of the defendants' deed to the plaintiff. This depends upon the construction to be given to these words in the latter deed : " Reference to their deeds to be had for a more particular description." The question is, what deeds are here referred to ? That they are the deeds of the defendants' grantors, is evident from the following considerations.

First, a reference. by the grantor, to deeds executed to him, is a *usual* method of description; but reference to deeds of adjoining proprietors, for a further description of the property conveyed, is unprecedented.

Secondly, grantors cannot be supposed to be cognizant of the contents of adjoining proprietors; but of their own deeds they may be.

Thirdly, *non constat* that the adjoining proprietors, any or all of them, have any deeds. They may hold by devise; by inheritance, by execution or by adverse possession.

Fourthly, the deed given by the defendants follows the description of the deeds of their grantors.

Fifthly, the word " their" must be construed in connexion with the words " more particular description." Of what ?

*Litchfield,*
*June, 1835.*
———————
Hubbard
*v.*
Norton.

Doubtless, of the premises conveyed. But of these the deeds of the adjoining proprietors can contain no description. The reference, therefore, must be to the deeds of the grantors.

Sixthly, the grammatical construction of a sentence is immaterial, if the intent be apparent. 1 *Sw. Dig.* 221, 3, 5. *Fairfield* v. *Morgan*, 2 *New Rep.* 38. 55. *Denn* d. *Wilkins* v. *Kemeys* & al. 9 *East* 366. *Bigelow* v. *Benedict* & al. 6 *Conn. Rep.* 116. *Booth* v. *Wallace*, 2 *Root* 247.

If the deeds were admissible, the other evidence offered by the defendants in connexion with them, was also admissible. *Howe* v. *Bass*, 2 *Mass. Rep.* 380. *Belden* v. *Seymour*, 8 *Conn. Rep.* 19. *Worthington* v. *Hylyer*, 4 *Mass. Rep.* 196. *Doolittle* v. *Blakesley*, 4 *Day* 265.

2. That the reconveyance of the premises, by way of mortgage, with covenants, constitutes an estoppel upon the plaintiff, or operates to suspend the covenants of the defendants, until the plaintiff pays the consideration and satisfies the mortgage.

In the first place, the deed by the defendants to the plaintiff, and the reconveyance by way of mortgage, constitute one contract, by the deeds being executed at the same time, by and between the same parties, relating to the same subject matter, and to carry into effect the same original agreement. *Isham* v. *Morgan*, 9 *Conn. Rep.* 374. *Holbrook* v. *Finney*, 4 *Mass. Rep.* 566. 569. *Stow* v. *Tifft*, 15 *Johns. Rep.* 458. 463. *Crop* v. *Norton*, 2 *Atk.* 74. *Jackson* d. *Trowbridge* & ux. v. *Dunsbagh*, 1 *Johns. Ca.* 91. *Montague* v. *Tidcombe*, 2 *Vern.* 518.

Secondly, if the defendants were to sue the plaintiff on the covenants in the mortgage deed, would not they be estopped, by the covenants in their own deed ? Estoppels are reciprocal. *Com. Dig. tit.* Estoppel. B.

Thirdly, any other rule than that for which the defendants contend, will render the covenants in the mortgage deed useless, or worse than useless.

Fourthly, the law discountenances circuity of action. Why should the plaintiff recover a sum of money on the covenants in the defendants' deed, to be rendered back *instanter*, in an action in their favour on the covenants in the mortgage deed ? The court should adjudge, that the money should remain where it must ultimately rest. *Com. Dig. tit. Pleader.* 2 V. 12. *Morley* v. *Frear*, 6 *Bing.* 534. (19 *Serg.* & *Lowb.* 161.)

Litchfield,
June, 1835.

Hubbard
v.
Norton.

Fifthly, the defendants' covenants stand as *a security* for the payment of the mortgage debt. This is clearly so, as to the covenant of warranty. Why should not the same rule apply as to the other covenants? *Bac. Abr. tit.* Warranty. O. *Co. Litt.* 389. *b.* 390. *a.* 393. *a. b. Kane* v. *Sanger,* 14 *Johns. Rep.* 89. *Tufts* v. *Adams,* 8 *Pick.* 547. *Wyman* v. *Ballard,* 12 *Mass. Rep.* 304. The rule that covenants *per verba de presenti* do not run with the land, as recognized *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 495. and *Mitchell* v. *Warner,* 5 *Conn. Rep.* 497. has been questioned, by high authority. *Sprague* v. *Baker,* 17 *Mass. Rep.* 586. *Kingdon* v. *Nottle,* 1 *Mau. & Selw.* 355. Same parties, 4 *Mau. & Selw.* 53. *King* v. *Jones* & al. 5 *Taun.* 418.

3. That the existence of the highways being notorious, they do not constitute a breach of the covenants. *Whitbeck* v. *Cook* & ux. 15 *Johns. Rep.* 483.

4. That if the plaintiff's action is sustainable, he can recover only nominal damages. *Wyman* v. *Ballard,* 12 *Mass. Rep.* 304. *Sprague* v. *Baker,* 17 *Mass. Rep.* 586.

WILLIAMS, Ch. J. 1. As to the evidence offered. It cannot seriously be contended, in the absence of testimony on the part of the defendants, but that the description in the defendants' deed, as connected with the proof of the plaintiff, would include the lot No. 5.; nor is there much doubt a to its extending to *Frink's* line on the *West,* so as to include lot No. 6., as far *North* as the *Bingham* farm. But the defendants claim, that their deed, after describing the several tracts conveyed, refers to the deeds of their grantor, and thus makes them proper evidence, and in that connection, the parol testimony is proper; and if the deed of *Calhoun,* their grantor, is so referred to, as to make part of their deed, this inference would seem to be just; for as *Calhoun's* deed speaks of his farm in the occupation of *Lemon,* what composed that farm and what was occupied by *Lemon,* would seem to be proper subjects of enquiry. The question then arises, does the defendants' deed, by fair intendment, refer to their deed from *John T. Calhoun?*

The deed first describes the two hundred acres about which the controversy arises, and gives the bounds. It then describes the fifty acre lot, bounded *South* on *Nathaniel Church's* land,

Litchfield,
June, 1835.

Hubbard
v.
Norton.

*East* on highway, *North* on *Hamlin's* heirs, *West* on *Daniel Brewster's* land; "reference to *their deeds* to be had for a more particular description." Now, what deeds are meant and intended? For when another instrument is referred to, to controul this, it must be referred to in such a manner as to leave no reasonable doubt what instrument was intended. Reference to their deeds! Was it the deed of *John T. Calhoun* of the two hundred acres, or the deed of the fifty acres? If either of these were intended, it would be very remarkable; because neither the name of *John T. Calhoun,* nor of the grantor of the fifty acres, appears at all in the deed; nor are we as yet informed who was the grantor of the fifty acres. There is, then, nothing that can be laid hold of, to connect the reference of their deeds with the defendants' grantor. Indeed, it does not appear from the instrument, that the defendants derived their title to the land in controversy, by a deed from any one. They might have derived it, by descent, or by levy of execution; unless the reference is to prove the *nature* of their title, as well as the *extent* of it. To make this clause in the deed prove, in the first place, that they derived title by deed, and from *John T. Calhoun,* and that was the deed, or one of the deeds, referred to, would be going very far indeed; more especially, when the grammatical construction is plain: which is a reference to the persons last before spoken of, who have title by deed. As the adjoining proprietors may have deeds, as well as the grantors, the one may be referred to as well as the other; and although it might not be as common, yet it is quite as usual as to refer to deeds of persons not named or described. It is true, indeed, that the grammatical construction must yield, if the intention be plain; but the difficulty here is, the sense is not plain. If we desert the grammatical construction, we are only involved in conjecture.

It is further claimed, that the description in the defendants' deed to the plaintiff, follows that of *Calhoun* to them. But before we can look at this deed at all, we are to determine from the defendants' deed itself, whether we can look at *Calhoun's* deed for explanation; and we are not first to look at it, to see if it will give the explanation. The fact that it will prove the proposition to be established, will not prove that it is admissible for that purpose.

It is also said, that the word "their" in connection with the

*Litchfield,*
June, 1835.

Hubbard
*v.*
Norton.

words " more particular description," show, that it must mean of the premises conveyed. Now, when a full and apparently perfect description of the land conveyed had been given in the deed itself; when no allusion whatever had been made to the grantors claimed; and those grantors had not even been named; and when the ambiguity is of their own creating, it is too much to presume, in the first place, that they derived title by deed to the lands conveyed, and that a general reference of this sort must be intended to apply to the deeds to them, in order to correct the errors, or supply the deficiency of the deed in question. If, as is probable, there has been a mis-description, let the proper forum be resorted to, to correct it; but at law, the construction claimed cannot be admitted. And if it is not properly shewn, that the *Calhoun* deed is referred to, the other evidence cannot be material or relevant.

2. As to the evidence offered that the highways were open and notorious, and that the plaintiff knew of the incumbrances on the land. It has not been questioned at the bar, but that a highway was an " incumbrance," within the meaning of the covenants. Although this has been doubted, by a highly respectable judge in the state of *New-York*, in the case of *Whitbeck* v. *Cooke* & ux. 15 *Johns. Rep.* 483. it is certain, that the right of the public to an easement over the land, is utterly inconsistent with that exclusive dominion, which the tenant in fee claims and exercises in ordinary circumstances. It is true, that the advantages derived from the highway may be more than equivalent to the loss sustained thereby; yet so long as others have a right of enjoyment, which the owner of the soil can neither prohibit nor controul, it seems clear, that there is subsisting a legal incumbrance; and so it was ruled, by the supreme court of *Massachusetts*, in the case of *Kellogg* v. *Ingersoll*, 2 *Mass. Rep.* 97.

The question, however, submitted to us, is, whether evidence is admissible to show, that the plaintiff, when he took this deed, knew of the existence of these roads. If the existence of the roads is not a breach of warrantry, then the proof is wholly immaterial; if it is, then the proof is improper. For if the highways are incumbrances, and that known to the plaintiff, yet if the defendants were willing to warrant against them, that warranty must be obligatory, unless there is something in the war-

*Litchfield,*
*June, 1835.*

Hubbard
*v.*
Norton.

ranty itself connected with the plaintiff's knowledge, which renders it void.

How can the plaintiff's knowledge destroy the effect of the defendants' covenants? Suppose the defendants had sold a farm, which they and the purchaser both knew they did not own; could that knowledge destroy or affect the nature of the covenant of seisin? If not, by what rule can such knowledge any more impair a covenant of warranty against incumbrances?

If it be said, that warranties in personal contracts do not extend to visible or known defects, *that* will apply to one of these covenants as well as the other. But it is believed, that it has never been held to affect contracts of this kind under hand and seal. Ch. J. *Spencer*, in the case of *Whitbeck* v. *Cook & ux.* before referred to, says: "It must strike the mind with surprise, that a person who purchases a farm through which a public road runs, at the time of purchase, and had so run long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn round on his grantor, and complain that the general covenants in the deed have been broken, by the existence of what he saw when he purchased, and what must have enhanced the value of the farm." 15 *Johns. Rep.* 491. Upon the principle on which this judge proceeds, the evidence would be unnecessary, because he presumes knowledge in the grantee. He also presumes that the value of the farm will be enhanced, by the road. This may be so, or it may not be so. If it is, very little damages could be recovered; if it is not, no weight is added to the argument from the fact that cases may arise where it may be so. But if this course in the grantee might excite surprise, will it not excite more surprise that the grantor should convey these lands, with the knowledge he must have of these incumbrances, without making an exception of them, unless he was willing to sustain the damages that might arise from them? When it is recollected, that this is the deed of the grantor, and these his covenants, it seems more correct to say, that he must abide by them, than to permit him to unnerve or destroy them, by proof of this kind, which is only calculated to induce a belief that the party grantor could not have intended what he has actually covenanted for.

The court are, therefore, of opinion, that the evidence is not admissible.

3. The next question arises from the fact, that the land was immediately reconveyed, by the plaintiff, to the defendants, to secure the purchase money, with similar warranties; and that more than half the purchase money remains unpaid, with interest.    And the defendants rest their defence on the assignments of the covenants under the second deed; or that the covenants in the second deed create an estoppel; or that they are a bar to prevent a circuity of action.

As to the first ground, this court have decided, that covenants against incumbrances, and that the grantor is the owner of the land, are personal covenants, which do not run with the land; and, of course, cannot be assigned. *Mitchell* v. *Hazen*, 4 *Conn. Rep.* 495.    *Mitchell* v. *Warner*, 5 *Conn. Rep.* 497. *Davis* v. *Lyman* & al. 6 *Conn. Rep.* 249.

When this purchase was made and the deed delivered, if the defendants were not owners of the land, or any part of it, or if the covenants against incumbrances were broken, a breach existed, and a right of action instantaneously arose, which was not assignable, as it did not run with the land.    *Mitchell* v. *Warner*, 5 *Conn. Rep.* 497.

It is also claimed, that the covenants in the second deed constitute an estoppel to the plaintiff's claim on the first.    Estoppels are not to be favoured; indeed, it is said, they are *odious.* A technical accuracy is required, which is not liable to the most subtle and scrupulous objection. *Smith* v. *Sherwood*, 4 *Conn. Rep.* 281.    They must be certain to every intent, and not be taken by argument or inference. *Co. Litt.* 352.

Try this case by these rules.    *Norton* and *Stocking* sell to the plaintiff a piece of land, and agree to warrant the title. They take a mortgage of the same grounds, with like covenants, to secure the purchase money.    And it is now claimed, that the last covenants preclude or estop the plaintiff from a right of action on the others, because it is said they are simultaneous.    Unless all principles of common sense are discarded, we must suppose, that the deed of the defendants conveying the land, in fact preceded that of the plaintiff, which was given to secure the consideration money for the land so conveyed. There must, then, have been a seisin in the plaintiff, under and by virtue of the defendants' deed to him.    It was decided,

*Litchfield,*
June, 1835.

Hubbard
*v.*
Norton.

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1835.*

Hubbard
*v.*
Norton.

by this court, in the case of *Barkhampsted* v. *Farmington*, 2 *Conn. Rep.* 600. that such a seisin was sufficient to confer a settlement, although the land was immediately reconveyed to secure the debt; and the cases cited from *New-York* and *Massachusetts*, so far from shaking that case, rather confirm it. Those were cases where the wife claimed dower; and the courts in both states admit, that the deed of conveyance gave an immediate seisin to the husband; but as the estate was reconveyed immediately as security, by way of mortgage, they also held the wife not entitled to dower, not because there was no seisin, but because the seisin was instantaneous; and that it was settled law, that such an instantaneous seisin in the husband was not sufficient to give a right of dower to the wife. *Holbrook* v. *Finney*, 4 *Mass. Rep.* 566. *Stow* v. *Tifft*, 15 *Johns. Rep.* 458. 462.

If, then, we must consider the plaintiff's deed as subsequent to that of the defendants, it can be no estoppel, because a warranty of title by the plaintiff, in a subsequent deed, will not prove that the defendants had title when they conveyed to the plaintiff: for the plaintiff, might, at that time, or immediately after, have purchased in another title, or removed the incumbrance. The contrary is not so clearly implied as to become one of those presumptions of law, which cannot be rebutted. To create that legal certainty requisite to constitute an estoppel, the defendants must show, that the plaintiff could have no other title than that acquired by deed of the defendants. It may be improbable, but surely is not impossible. The fact that the plaintiff had a title when he reconveyed it to the defendants, is consistent with the fact that the defendants had not a perfect title when they conveyed to the plaintiff: of course, there can no estoppel.

It is said, that estoppels must be *reciprocal.* As it respects leases or indentures of every kind, or verdicts, this may be true generally; but does this principle apply to deeds poll? In such a deed, the grantor covenants, that he has title, and is estopped to deny it. Is the grantee also estopped? If he is, the whole effect of the covenant is lost, and it becomes a perfect nullity. Lord *Coke* says, " if the lease be made by deed indented, then are both parties included, but if it be by deed poll, the lessee is not estopped to say, that the lessor had nothing at the time of the lease made." *Co. Litt.* 47. b. *Plowd. Com.* 434.

*Litchfield,*
June, 1835.

Hubbard
*v.*
Norton.

Again, it is said, these facts form a good defence, because the law abhors a circuity of action ; and if the plaintiff can recover of the defendants, they can also recover of the plaintiff. This objection presupposes what is not admitted, that the plaintiff had not procured a title, when his deed was given, or since that time. If the plaintiff had proved such a deed, when he gave his, then the defendants could not recover any thing upon their covenants in the mortgage deed. If they have since gained such title, and removed such incumbrance, then only nominal damages can be recovered ; and unless the court can see, that the same damages must be recovered, by the one party as by the other, the suit will not be barred for fear it will produce another. *Cuyler* v. *Cuyler,* 2 *Johns. Rep.* 186.

In support of these several objections of the defendants, it was said, that these deeds, being given at one and the same time, and for one object, are to be considered as if they were one instrument. It is true, that to give effect to the intention of parties, such a construction has been given. So, too, where there is but one instrument, the law will adjudge priority of operation, although it be sealed at one and the same instant. *Digges's* case, 1 *Co.* 174. *Res.* 6. But in this case, the construction contended for, by the defendants, would rather tend to defeat than to carry into effect the intention of the parties.

The view taken of this case makes it unnecessary to consider how far the fact that the deed of the plaintiff to the defendants is a *mortgage*, ought to affect this defence. Aside from that objection, this defence cannot be sustained.

4. The only remaining question is, as to the damages. On this subject, so far as it respects the highways, the jury are to estimate the actual injury to the party. If they are, as they are claimed to be, a benefit to the farm, then only nominal damages will be given ; if otherwise, a fair compensation is to be made for the injury sustained.

As to that part of the farm to which the defendants had no title, the damages are to be assessed according to the value of that part of the farm to which they had no title, compared with the consideration paid for the whole, and interest thereon. *Morris* v. *Phelps,* 5 *Johns. Rep.* 49. 56.

The superior court are to be advised, that the evidence offered by the defendants is not admissible ; that the plaintiff

*Litchfield,*
June, 1835.
———————
Hubbard
*v.*
Norton.

is entitled to recover ; and that the damages are to be assessed upon the principle stated above.

In this opinion, the other Judges concurred, except CHURCH, J., who gave no opinion, having been of counsel in the cause.

Judgment to be given for plaintiff.