# WILLIAM L. CROSBY, Appellant, v. MARY F. EVANS and SUSIE E. EVANS.

### Division One, March 2, 1920.

1. **PRACTICE: Further Evidence After Demurrer.** To permit plaintiff to introduce further evidence after he has rested and after a demurrer to the case as then made has been argued is a matter within the trial court's discretion.

2. **COVENANTS: In Deed and Mortgage.** A vendee who secures payment to his vendor of the price of his purchased property by mortgaging back with convenants the estate granted, does not thereby release the vendor from liability on his similar covenants.

3. ———: ———: **Running With the Land.** The covenant of indefeasible seizure runs with the land when the deed containing it passes any interest to carry the covenant along, the purpose being to enable a remote grantee substantially damaged by the breach to recover his damage; but a purchase-money mortgage or deed of trust, given by a grantee who suffers from his grantor's broken covenant, does not carry back to the grantor the right to sue on the covenants in the original deed or cancel those covenants.

4. ———: ———: **Estoppel: Damages.** The grantee in a deed who gives back a deed of trust for the purchase money, containing similar covenants, does not estop himself thereby to sue on the covenants in the deed when a substantial breach occurs which damages him, nor create in the grantor a right to sue.

5. ———: **Foreclosure of Deed of Trust by Agreement: Grantee's Right to Damages for Breach.** The grantee, who gave a deed of trust back to secure the purchase money, did not lose his right to recover damages for breach of the covenants contained in his deed, if default in payment and foreclosure sale by the trustee occurred pursuant to a scheme arranged between said mortgagor and said mortgagee that the mortgagee was to buy in order to cure a fault in said mortgagor's title for which the mortgagee was liable on his covenant.

6. ———: ———: ———: **Subsequent Sale.** And where the agreement was that the deed of trust should be foreclosed and the property bought by the mortgagee in order to perfect title in the mortgagor, but the mortgagee, having purchased at the sale, conveyed to a third party, thereby cutting off the mortgagor's title, the mortgagor is entitled to maintain an action for breach of the

covenant contained in the deed to him as grantee and recover the amount of purchase money paid by him after his eviction by such subsequent grantee.

7. ———: ———: ———: Interest. The mortgagor, in his action for damages for breach of covenants, is entitled to interest on money paid on the purchase price, only from date of eviction, and not from date of the payments, if he was meantime in possession and was not answerable over to any one for rents and profits.

8. ———: ———: ———: Reply: Departure: Confession and Avoidance. Where the defense set up in the answer to an action for damages by the grantee for breach of covenants in a deed, is that the plaintiff lost his right to sue as the result of the sale under the purchase-money deed of trust, a replication pleading, by way of confession and avoidance, an agreement that the property should be sold by the trustee in order to perfect the title in the defendant, does not state a new cause of action, and is not a departure, unless the agreement was a contract substituted for the covenants.

8. JURY: Irregular Summons. An irregularity in summoning talesmen for the jury, no prejudice appearing, is not reversible error.

Appeal from Greene Circuit Court.—*Hon. Arch A. Johnson,* Judge.

REMANDED (*with directions*).

*U. G. Johnson* and *Warren L. White* for appellant.

(1) The answer states no defense. It is true that convenants of seizing and of warranty run with the land in this State, and inure to the subsequent grantee upon whom loss falls. Coleman v. Lucksinger, 224 Mo. 15; Allen v. Kennedy, 91 Mo. 331; Dixon v. Desire, 23 Mo. 151. But this rule is not applied to a mortgage given for the purchase money. (a) Where a conveyance is made with such covenants and a mortgage with like covenants is given for the purchase money, the mortgagor is not estopped by his covenants to sue on the vendor's covenants, nor does the vendor absorb all right by virtue of the mortgage back to him. And this is true in those states where the mortgagee taxes the title instead of mere lien. Connor v. Eddy, 25 Mo. 72; Randall v. Lower, 98 Ind. 258; 12 Cent. Digest, 122,

Title Covenant, sec. 75; Hubbard v. Norton, 10 Conn. 422; Hardy v. Nelson, 27 Maine, 525; Rawle on Covenants, secs. 217, 219; Resser v. Carney, 54 N. W. (Minn.) 89.; Haynes v. Stevens, 11 N. H. 34. (b) A foreclosure of the purchase money mortgage, by the vendor, where he purchases at the foreclosure sale, does not extinguish the right of action of the mortgagor for breach of the covenants in the deed to him. Resser v. Carney, 54 N. W. (Minn.) 91; Haynes v. Stevens, 11 N. H. 35; Bennett v. Vance, 3 John. (N. Y.) 363. (c) In those states where a mortgage vests the legal title in the mortgagee, a mortgage for the purchase money does not extinguish the mortgagor's right to sue on the covenants in the deed by which he acquires title. Hardy v. Nelson, 27 Me. 528; Rawle on Covenants, sec. 219, and note 1, p. 328; Bennett v. Vance, 3 Johns. 363. (2) The after acquisition of the paramount title which defendants plead is no defense. Plaintiff having failed to record his deed, defendants, after purchasing the paramount title, conveyed it to a stranger. Defendants are estopped by that act to deny liability on their covenants. Besides, defendants had foreclosed their purchase money mortgage March 31, 1910, before they bought the outstanding title at the sheriff's sale May 11 of that year, so that defense is refuted by the facts. 11 Cyc. 1122, note 76; Clark v. O'Neal, 13 La. Ann. 381; Williamson v. Williamson, 71 Me. 442; Curtis v. Deering, 12 Me. 499. (3) That the foreclosure was pursuant to an agreement to perfect the title, not a hostile one, and left plaintiff's right to redeem unimpaired, was sufficiently shown to make out a case for the jury.

*G. W. Goad* and *O. T. Hamlin* for respondents.

(1) The second count of defendant's answer states a complete defense to plaintiff's petition. (a) In Missouri covenants of warranty run with the land, and the right to sue upon a broken covenant of warranty passes to the grantee or assignee, who must sue in his own

name. The grantor or assignee cannot sue. Van Dorn v. Rolfe, 20 Mo. 455; Dickson v. Desire, 23 Mo. 166; Chambers v. Smith, 23 Mo. 174; Vancourt v. More, 26 Mo. 98; Jones v. Whitsett, 79 Mo. 191; Hunt v. Marsh, 80 Mo. 398; Allen v. Kennedy, 91 Mo. 324; Johnson v. Johnson, 170 Mo. 48; Coleman v. Lucksinger, 224 Mo. 14; Langenberg v. Heer Dry Goods Co., 74 Mo. App. 20. (b) A mortgage or deed of trust on real estate is now a mere surety for the debt—is a chattel interest passing at the death of the mortgagee to the personal representatives. Therefore, a mortgagor, prior to foreclosure, continues to be the owner of the estate so long as he is permitted to remain in possession. Woods v. Hildebrand, 46 Mo. 286; Pierce v. Gabbert's Adm., 70 Mo. App. 205; Kennett v. Plummer, 28 Mo. 142; Pierce v. Iron Co., 49 Mo. 124; Hardwick v. Jones, 65 Mo. 60; In re Life Assn. of America, 96 Mo. 636; Fischer v. Johnson, 51 Mo. App. 162. The last-mentioned point and authorities fully explain the reason for the ruling in Conner v. Eddy, 25 Mo. 72, cited and relied on by plaintiff. (c) Plaintiff cannot claim as an excuse for defaulting in the payment of the notes secured by the deed of trust to defendants that there was a defect in the title conveyed by the warranty deed of defendants. Cartwright v. Culver, 74 Mo. 179; Hunt v. Marsh, 80 Mo. 398; 27 Cyc. 1554, 1555. (d) Defendants conveyed to plaintiff with covenants of warranty, and plaintiff conveyed back to defendants with like covenants of warranty. These covenants cancel each other. Dervin v. Hendershott, 32 Iowa, 192; Stephens v. Winship, 11 Am. Dec. 182; Hatch v. Kimball, 14 Me. 9; Goodall v. Bennett, 22 Wis. 565; Green v. Edwards, 15 Tex. App. 382; Eveleth v. Crouch, 15 Mass. 307; Carroll v. Carroll, 113 Iowa, 419; Willis v. McGough & Co., 56 Ga. 198; Field v. Willingham, 49 Ga. 345; Brown v. Metz, 33 Ill. 339; Silvermann v. Silvermann, 104 Ill. 137; 11 Cyc. 1094. (2) If it be determined that plaintiff still had a right to sue notwithstanding the foreclosure of the deed of trust which divested him of all

title, or that defendants acquired the land at said foreclosure sale in trust for the use of plaintiff, then the after acquired title of defendants at the sheriff's sale June 11, 1910, by virtue of their warranty deed to plaintiff June 10, 1907, inured to and vested in plaintiff and no damages for breach of covenant can rise. Boyd v. Haseltine; 110 Mo. 206; Cocrill v. Bane, 94 Mo. 444; Johnson v. Johnson, 170 Mo. 34; Cartwright v. Culver, 74 Mo. 179; Hunt v. Marsh, 80 Mo. 398; Crumb v. Wright, 97 Mo. 19.; R. S. 1909, sec. 2871; Reese v. Smith, 12 Mo. 344; Collier v. Gamble, 10 Mo. 466; Bank of Utica v. Merservan, 49 Am. Dec. 197; 11 Cyc. 1137. (3) Defendants' motion to strike out plaintiff's reply should have been sustained. (a) Plaintiff's petition is an action at law for breach of covenant. The reply is an action in equity to declare a trust based on a written agreement. These two causes of action should have been alleged in the petition, not one in the petition and the other in the reply. Mathieson v. Railroad, 219 Mo. 552; Moss v. Fitch, 212 Mo. 502; Hill v. Mining Co., 119 Mo. 30; Jackson v. Powell, 110 Mo. App. 252; Stepp v. Livingston, 72 Mo. App. 179; Crawford v. Spencer, 36 Mo. App. 82; Lanity v. King, 93 Mo. 519; Rhodes v. Lumber Co., 105 Mo. 313; McMahill v. Jenkins, 69 Mo. App. 281; Milliken v. Commission Co., 202 Mo. 654; Mahoney v. Reed, 40 Mo. App. 99; Cement Co. v Ullman, 159 Mo. App. 254; Roving Fork Co. v. Produce Co., 193 Mo. App. 658; Mahoney v. Reed, 40 Mo. App. 109. If plaintiff desired to shift his ground he should have done so by amending his petition. Randolph v. Frick, 57 Mo. App. 405. Said cause of action should be separately stated, separately tried, one by the chancellor and one by a jury. McHoney v. Ins. Co., 44 Mo. App. 426; Zeidman v. Molasky, 118 Mo. App. 123; Young v. Coleman, 43 Mo. 179; Jones v. Moore, 42 Mo. 413. (b). A reply cannot be used in aid of the petition to introduce for the first time a new cause of action or an additional cause of action, nor to engraft on the petition a material allegation omitted therefrom. Rhodes v. Lum-

ber Co., 105 Mo. App. 313; McMahill v. Jenkins, 69 Mo. App. 281; Hill v. Mining Co., 119 Mo. 30. (4) Defendants' demurrer to the evidence at the close of plaintiff's case should have been given, as the evidence failed to establish the terms and conditions of the alleged last written agreement set up in plaintiff's reply. (a) The conversation of Geo. W. Evans with the witnesses, U. G. Johnson and A. W. Lincoln, had long prior to the date of said alleged written agreement, is no evidence of the subsequent written agreement. Gorham v. Auerswold, 53 Mo. App 131;   Conrad v. Fischer, 37 Mo. App. 376;   Johnson Co. v. Wood, 84 Mo. 489; Bignal v. Pierce, 59 Mo. App. 673; Taylor v. iggs, 26 U. S. 591, 7 L. Ed. 275.; Richard v. Robbins, 124 Mass. 105.   (b) If an agreement can be inferred from the facts related by the witnesses Johnson and Lincoln, and a subsequent written agreement inferred from that agreement then we have an inference based on an inference—a presumption on a presumption which is prohibited by law.   Wulfing v. Cork Co., 250 Mo. 723.   (c) The witness Goad testified only as to the fact that a written agreement was entered into regarding the sheriff's sale.   There was no evidence that any written agreement (or any other agreement) was ever made regarding the foreclosure sale of the deed of trust, although such agreement must be shown to have not only been made, but its contents proven by full, clear, strong and convincing evidence.   Bennett v. Walker, 23 Ill. 97;   Peters v. Worth, 164 Mo. 439.; Cunningham v. Railroad, 61 Mo. 36;   17 Cyc. 778;   25 Cyc. 1627; 3 Wigmore on Evidence, sec. 2105, p. 2845.   (5) The trial court erred in submitting the cause of action alleged in plaintiff's reply to a jury.   The same should have been tried by the chancellor.   McHoney v. Ins. Co., 44 Mo. App. 426;   Jones v. Moore, 42 Mo. 413;   Young v. Coleman, 43 Mo. 179.   (6) The trial court erred in requiring the sheriff to summons five extra jurors.   The court's duty to make out such list of extra jurors cannot be legally delegated to the sheriff.   Laws 1911, p. 307, sec. 8.   (7) Plaintiff was entitled to interest only from

date of eviction.  The instructions and verdict gave interest from date of payments.  Pence v. Gabberts, 70 Mo. App. 209.

GOODE, J.—The defendants Mary F. and Susie E. Evans, conveyed by a warranty deed, dated June 25, 1895, recorded April 23, 1903, to George W. Evans, their father, Lot 37 in Block 3 of Hobart's Addition to the City of North Springfield (now Springfield), Missouri. On June 10, 1907, the defendants conveyed the same lot to the plaintiff, William L. Crosby, and his then wife, Jennie Crosby, from whom he was divorced in 1908. That conveyance, both parties agree, contained the covenants to be implied from the words "grant, bargain and sell;" namely, covenants that the grantors were seized, at the date of the conveyance, of an indefeasible estate in fee simple in the lot;  that it was then free from incumbrance done or suffered by the defendants (the grantors) or any person under whom they claimed, and for further assurances of the title by them and their heirs to the grantees and their heirs and assigns.  The statement is made by one of the parties and not contradicted by the others, that there was in said deed a separate covenant of general warranty, and that the present action is on all the covenants.;  but the petition, as epitomized in the abstract of record, counts on a breach of the covenant of seizin only, alleging "that at the time of the conveyance the  plaintiffs [sic] were not seized of a fee simple title to the said premises, and had no title whatever to the same; but that said title was outstanding in other persons, and by reason whereof plaintiff lost possession and was ousted,"  etc.   On June 10, 1907, the date of the deed to plaintiff and his wife, they gave a deed of trust on the lot to J. B. Johnson, trustee, to secure payment to the defendants of seventy-eight promissory notes, payable from month to month, for $12.50 each, or $975, representing the price of the lot ($1000), except a cash payment of twenty-five dollars.  That deed of trust contained the statutory

covenants implied from the words "grant, bargain and sell." About one year later, and on June 29, 1908, plaintiff's former wife conveyed the lot and other lands to him by a deed containing the statutory covenants. Between the year 1895, when the defendants conveyed the premises in question to their father, George W. Evans, and June 10, 1907, when they conveyed it to plaintiff and his wife, said George W. had passed the title to George F. and Kate Baldridge, by a warranty deed, dated April 25, 1903, recorded May 22, 1903. The Baldridges attempted to give a deed of trust on the lot, dated April 21, 1903, filed May 27th the same year, to J. B. Johnson, as trustee for George W. Evans, to secure their note for $755 to Evans; but this instrument, though signed by the Baldridges, named Evans as the grantor and, besides, was acknowledged by the Baldridges, before said trustee as a notary public. Three months later, on July 27, 1903, the Baldridges gave a deed of trust, filed July 28, same year, on the premises to Webster Edwards, trustee, to secure the payment of a promissory note for $150 to M. L. Middleton. The last incumbrance was a lien prior to the title of the plaintiff Crosby, and was learned by him to be in 1909 or 1910, when he had agreed to sell the lot, and the title was examined by an attorney for the would-be purchaser. Meanwhile Crosby had paid installments amounting to three hundred dollars on the price he was to pay defendants. At this point there is testimony tending to show an agreement in writing was made between Crosby and George W. Evans, the latter acting as agent for defendants, by which said Evans was to have the first Baldridge deed of trust, also the one given by the Crosbys, foreclosed, and have Crosby, or the defendants for him, buy the lot at the foreclosure sales and thereby make perfect his title. Crosby was not permitted to testify about this agreement, because George W. Evans, who made it with him, had become demented; and the terms of the instrument, which had been lost, are to be gathered from oral evidence. Judge Lincoln, an at-

14—281 Mo.

torney of Springfield, testified Crosby and George W. Evans consulted him about what to do to cure the former's title after he (Lincoln) had discovered its defects, and he advised them they "had better reform that deed of trust (meaning the first Baldridge one) in the circuit court and get a foreclosure there, *and also foreclose* the other deed of trust Mr. Crosby had given; that he recommended that course for the purpose of getting the title where it would pass to Mr. Crosby. This testimony was given by Lincoln:

"'Did Mr. Evans say anything about the purpose of those proceedings? Were they to clear the title? A. That was what he wanted to have done, clear up the title and give Mr. Crosby and those claiming under him a good title.

"Q. Did they talk about that arrangement in your presence? A. They did.

"Q. What was the reason for foreclosing the deed of trust that Crosby had given? A. The reason for that was to cut out the after title of Mr. Butcher and Mr. Robertson.

"Q. They had filed some conveyance for record, had they? A. Yes, sir.''

Another attorney, U. G. Johnson, who then represented Middleton, said Evans officed across the hall from him and talked to him about making the agreement after Judge Lincoln had advised them, but he (Johnson) didn't know when it was made; only knew what Evans said he was going to do. Witness, among other statements, said:

"Q. You say that Evans talked to you about that matter of Crosby's? A. Yes, sir.

"Q. What did he tell you, if anything, about what he was going to do? A. His conversation to me was along this line; in the first place, he wanted to know what he could do after he found this defect. He said, 'I want to make my title good to Mr. Crosby,' and I think, maybe, I looked into it and told him he would have to foreclose, and that is what he agreed to do and he said Cros-

by had paid him pretty regular and he wanted to make good.''

George W. Goad, also an attorney, testified he drew an agreement between Evans and Crosby relating to the first Baldridge deed of trust, but that he couldn't recall the contents of the agreement; thought it was about the lot in question; involved a deed by Evans to Crosby of timber land in Dallas County; was drawn when the sheriff's sale was expected under the foreclosure judgment .(to-wit, of the two Baldridge deeds of trust); didn't relate to foreclosure of Crosby's deed of trust, but was long before; was some agreement about what should be done when the property was sold under foreclosure; the agreement was signed. These questions and answers are parts of Goad's testimony:

''Q. And did it purport to measure all the rights growing out of the foreclosure sale and the rights growing out of the sale of this lot under the deed of trust?  A. At that time. There had been a judgment on this Baldridge deed of trust, but the sale didn't occur for two or three months afterwards, or the next term of court.

''Q. They were friendly? ·  A. At that time they were. *This agreement was had long prior to the foreclosing.* My recollection is the sale under the Crosby mortgage was prior to the sale under the judgment and that this agreement was long prior to both of them. . . . .

''Q. Did the contract contain a recital for the consideration of the deed to Crosby and the deed in which title failed?  A. I don't know.

''Q. Did it recite what payments had been made by him?  A. I don't think so.

''Q. How were they to arrive at the consideration for this contract, the amount of Crosby's damage? A. I can't tell you. I know there was some insurance, some taxes and some bills, and some other things. Crosby and Evans had been negotiating some, and I think they had a-greed on some sort of an arrangement that they reduced to writing. My recollection is, although I could not testify to a single line in it, but my impression is that this in-

cluded several things that affected that property and also this judgment.

"Q. But the purpose and object was to make Crosby whole? A. Make them both whole.

"Q. And that was the interest Crosby had in it, making him whole because the title failed? A. I could not say. They had a transaction between them and I presume that written agreement was the settlement."

A foreclosure suit was brought by George W. Evans, and a sheriff's deed, dated June thirteenth and recorded December 13, 1910, made pursuant to the judgment rendered in it, by which all the interest in the lot of said Evans, the Baldridges, J. B. Johnson, the trustee in the defective Baldridge deed of trust, M. L. Middleton, the beneficiary of the second deed of trust given by the Baldridges, and Webster Edwards, the trustee named in it, were conveyed to the defendants Mary F. and Susie E. Evans.

But prior to the said sheriff's sale, and on March 31, 1910, J. B. Johnson, as trustee in the deed of trust made by the Crosbys to secure their purchase money notes, had conveyed their interest in the lot to defendants, pursuant to a sale by him on account of defaults in the payment of some of the notes. This sale occurred subsequent to the aforesaid judgment of foreclosure, but before the levy on May 11, 1910, thereunder, and, of course, before the sale on June 11th. Whether Crosby defaulted in his payments in consequence of his imperfect title and as a step toward having it made perfect, or because he had decided to abandon the property by reason of domestic troubles, or for some other reason, is an issue about which there is conflicting evidence.

After defendants had acquired title by their purchases at the sale under the Crosby deed of trust and at the sheriff's sale, and on the very day of the latter sale, they conveyed the lot by warranty deed to Allie Gray, who took possession, Crosby being then at work elsewhere and not in occupancy.

Crosby, having been dispossessed, filed the present action for an alleged breach of the covenant of seizin, obtained a verdict for the three hundred dollars he had paid on the price of the lot and one hundred and eighteen dollars interest; but pursuant to a motion filed by defendants, the verdict was set aside and a new trial granted with no reason given for the ruling. Plaintiff appealed from the order sustaining said motion.

The defenses are these: first, a denial of all the averments of the petition, except the allegation of the execution by defendants of the deed to plaintiff and his wife, containing the aforesaid statutory covenants; second, that the deed of trust given back by plaintiff and his wife to J. B. Johnson as trustee for plaintiffs, contained the same statutory covenants as did defendants' deed to plaintiff and his wife; that plaintiff took possession under the latter deed June 10, 1907, and continued in possession to March 21, 1910; that plaintiff's title was purchased on the last date by defendants at the sale by the trustee in consequence of plaintiff's default, and he thereupon ceased to have any interest in the premises, and is not a proper party to sue in this cause; third, that prior to any eviction of plaintiff, defendants, after the execution of their deed to him, containing the covenants sued on, acquired all the title not passed to him by defendants' said deed, which title inured to and vested in plaintiff as soon as it was acquired by defendants, by virtue of their said deed and covenant of warranty to him, and he sustained no damage by any outstanding title or incumbrance.

A replication was filed which, in two paragraphs, set up, in effect, that the purchases by defendants at the two foreclosure sales aforesaid, one by the sheriff under a judgment and the other by the trustee in the deed of trust given by plaintiff and wife, were made by defendants under an agreement entered into by them through their agent George W. Evans, to buy for plaintiff's benefit and to make perfect his title, and not to buy for themselves; that they paid no consideration nor gave the plaintiff any

credit on his secured notes, and that in disregard of their agreement, defendants conveyed the premises to Allie Gray.

The appeal went to the Springfield Court of Appeals where the judges disagreed, and one of them dissented and caused the case to be sent here, for the reason that the decision of the majority was in conflict with the decision of this court in Cartwright v. Culver, 74 Mo. 179; Hunt v. Marsh, 80 Mo. 396, and Carter v. Butler, 264 Mo. 306.

The error assigned for permitting plaintiff to introduce further evidence after he had rested and a demurrer had been argued to the case as then made, is without merit, that being a matter within the trial court's discretion. [St. Louis Pub. Schools v. Risley's Heirs, 40 Mo. 356, 370.]

Uncertain as is the evidence we have set out regarding the agreement between George W. Evans and Crosby, it tends to prove that, as defendants' agent, Evans agreed in writing with Crosby not only to have the first Baldridge deed of trust reformed and foreclosed by a decree of court, but also to have the lot sold by the trustee in the Crosby deed of trust, in order that defendants might make good their convenants to Crosby; or if the scheme failed, then to make him whole in some other way; perhaps by conveying to him land in Dallas County. Such an agreement must have included, either expressly or impliedly, an understanding by defendants to hold the property for Crosby or convey to him, if they bought at the sales. It could not have meant that they should buy for their own benefit and afterwards sell to some one else, because in so doing they would extinguish, instead of perfect, his title. The court took that view of the arrangement in instructing the jury to return a verdict for plaintiff, if they found the agreement was made; and one instruction given for defendants explicitly required the jury to find, as essential to such a verdict, that it had been agreed Evans would buy the property under the deed of the trust given by plaintiff, perfect the title and

then convey to plaintiff. The instructions touching the foreclosure are sound, unless a verdict for defendants should have been directed. That this ought to have been done is urged for several reasons, which will be considered.

Defendants say plaintiff is estopped to assert a right of action on the covenants in their deed to him and his wife, by the like covenants in the deed of trust the latter parties gave back. Otherwise stated, defendants say the covenants in the first deed ran with the land back to them or their trustee by force of said deed of trust, and this instrument having been foreclosed by a sale where defendants were the purchasers, the action for covenant broken enured to them, or rather was extinguished. But this is not the law when the second deed relied on to extinguish the right of action for a breach of the covenants in a prior one, is a mortgage or deed of trust given by a vendee to secure to his vendor the price of the land purchased. [Connor v. Eddy, 25 Mo. 72; Haynes v. Stevens, 11 N. H. 28; Smith v. Cannell, 32 Maine, 123; Sumner v. Barnard, 12 Met. 459; Hubbard v. Norton, 10 Conn. 422; Randall v. Lower, 98 Ind. 255; Resser v. Carney, 54 N. W. 89; Rawle, Covenants of Title (3 Ed.), sec. 266.] Some of those cases, including the Missouri one, decide the very question, and the others lay down principles which would compel the like ruling where a purchase-money mortgage is relied on to annul covenants in the deed of the vendor. We quote from Connor v. Eddy, 25 Mo. l. c. 75, 76:

"The plaintiff, having given a deed of trust on the lot, with covenants for title to secure the purchase money . . . is not estopped by his covenants from availing himself of any relief to which he would otherwise be entitled by virtue of the vendor's covenants to himself. This is the law with regard to mortgages with warranty of title given to secure the purchase money of the land mortgaged, and it is as applicable, if not more so, to deeds of trust for the same purpose. The law of es-

toppel has no application in such cases. [Rawle on Cov. 348.]"

Whether supported by authority or not, and we have found none which supports it, the notion is unsound that a vendee who secures payment to his vendor of the price of the purchased property by mortgaging back with covenants the estate granted, thereby releases the vendor from liability on his similar covenants. Not one of the many cases cited by defendants for the doctrine is in point. That of Devin v. Hendershott, 32 Iowa, 192, decided the mortgagee could maintain an action against one who was the grantor of the mortgagor on the covenants in the deed of said grantor; which is no more than to say the covenants ran with the land to the mortgagee. In Silverman v. Loomis, 104 Ill. 137, the cancellation of the defendant's covenants was not in consequence of a mortgage having been given for the purchase money. A man named Runyan had conveyed the premises in question, which were mortgaged at the time, to the defendant Loomis, with a warranty against incumbrances. Loomis conveyed back subsequently with the like covenant. Runyan then sold to Silverman, who was compelled to pay the mortgage and sued Loomis on the covenant in Loomis's deed back to Runyan. The court held the conveyance and reconveyance by Runyan to Loomis mutually cancelled the covenants, and that Silverman, as grantee of Runyan, could not sue on a covenant on which his grantor could not sue. The case of Brown v. Metz, 35 Ill. 339, is especially stressed, but affords defendants no help. Brown and two other men had made a deed with covenants and had taken back from the grantee a deed of trust, which was foreclosed and Brown bought the property, thereby acquiring the full estate he and his co-grantors had conveyed. He then conveyed it by quit-claim deed to a grantee who, by a similar deed, conveyed to another grantee. Brown was sued on the covenants in the original deed of himself and his co-owners. The court held the estate originally granted ceased in Brown when he acquired title the second

time and the covenants in the first deed did not run to
his later grantee or assigns, as no interest created by his
first grant passed by the second one, for the covenants in
the first deed to run with. The facts at bar are different
—would have the same effect if Allie Gray was suing
defendants on the covenants in their deed to plaintiff.
A Georgia case is cited wherein the defendants, who
were virtually mortgagees of certain premises, were held
not liable on the covenants in a deed they gave back by
way of release to their grantor (in a deed intended to
be a security and not an absolute conveyance) to a sub-
sequent grantee of said mortgagor. The mortgagor
could not sue on said covenants, because they were the
same as he had made to the mortgagees; and, therefore,
his grantee could not. [Willis v. McGough & Co., 56 Ga.
198.] A case in Iowa, also cited by defendants-as apropos,
was an action by a husband on the covenants in a
deed made to him by his wife without consideration, he
having by a deed with similar covenants reconveyed to
her, which the court held released her from liability to
him on her covenants. [Carroll v. Carroll, 113 Iowa, 419.]
We see no pertinency in that case to the doctrine in ques-
tion. In Brown v. Staples, 28 Maine, 497, a remark is
made to the effect that a second covenant acts as an
estoppel against an action on a prior one, or as a release
of damages; but the opinion said also the doctrine of
mutual cancellation does not apply so as to make the
covenants in a purchase-money mortgage annul those
in the deed granting to the mortgagor. Why should it?
The covenant of indefeasible seizin, the one in suit, runs
with the land, it is true, when the deed containing it passes
any interest to carry the covenant along; the purpose
being to enable a remote grantee substantially damaged
by a breach to recover his damages. [Allen v. Kennedy,
91 Mo. 324, 329.] But a mortgagee cannot be damaged
by a breach of his own covenant, though he may be by
the outstanding title or incumbrance covenanted against;
but that is beside the question in hand. In the instance
of a grantee who gives back a purchase-money mort-
gage or deed of trust, and suffers from his grantor's

broken covenant, there is no sound reason for the view that .the mortgage to his grantor carried back to the latter the right to sue on the covenants in the original deed or cancelled those covenants. We hold plaintiff's deed of trust had no such effect; and hold, also, that he neither estopped himself thereby to sue on the covenants when a substantial breach occurred which damaged him, nor assigned to defendants the right to sue, for they could not sue themselves. As for the covenants running to Allie Gray as defendants' grantee, suffice to say he was not damaged by the breach, as the incumbrance had been cleared off before he acquired title.

Another defense is that defendants' purchase of the property at the foreclosure sale by the trustee in the purchase-money deed of trust given by plaintiff and wife, cut off redress to plaintiff; and this for the reason that plaintiff was in possession of the premises, and had no right to refuse to pay his notes given for the price, simply because of the existence of incumbrances when he purchased. The legal proposition invoked is correct, for were the law otherwise, a vendee might evade payment of the price and perhaps never be disturbed. [Cartwright v. Culver, 74 Mo. 179.] The same rule applies when the breach consists of a prior incumbrance, for it may never be enforced; though the vendee is permitted to clear it if he pleases, and to recover thereupon from his covenantor, the breach being then substantial. But plaintiff had not discharged the prior incumbrances when the trustee's sale occurred, and it is argued not only that he lost his right of action on the covenant by the sale, but also that he was never damaged by the breach, since his estate passed from him, not as a result of the existence of the incumbrances, but in consequence of his own default in not meeting his notes. Plaintiff cites Resser v. Carney, supra; Haynes v. Stevens, 11 N. H. 28, and Wilder v. Davenport's Est., 5 Atl. (Vt.) 753, as opposed to the doctrine that foreclosure of a purchase-money mortgage or deed of trust will defeat the mortgagor's right of action against his vendor for a broken covenant, and defendants cite Wade v. Comstock, 11 Ohio St. 71, that

it will. We will spend no time examining those cases or their supposed contrary rules; for we are sure no court would hold a mortgagor lost his right if the default and sale occurred, as it did, in the case at bar, according to the jury's finding, pursuant to a scheme arranged between the mortgagor and the mortgagee to have the mortgage foreclosed in order to cure a fault in the mortgagor's title for which the mortgagees were liable on their covenant. A default in the performance of some condition of the mortgage was necessary to a valid sale by the trustee; and as Crosby's only default was in not paying the notes secured, it must have been relied upon to authorize the foreclosure sale.

If defendants, immediately following their purchase at the trustee's sale on March 21, 1910, had conveyed the lot to plaintiff as agreed, the perfect title they subsequently acquired by the sheriff's sale on June 11th would have inured to plaintiff under defendants' warranty of title; or if they had conveyed to him, instead of Allie Gray, after the sheriff's sale, their undertaking would have been fulfilled. But defendants contend the title thus acquired passed immediately to plaintiff, despite the deed to Allie Gray, as plaintiff was still in possession and it was through his fault in failing to record his deed that defendants' deed to Allie Gray, when recorded, vested the title in him as against plaintiff (citing Sec. 2871, R. S. 1909, and cases.) Defendants must be presumed, in deference to the verdict, to have agreed that any purchase made by them or their agent at either sale or both, should be for the benefit of plaintiff and a step toward making his title good. Their conveyance to Gray was a violation of this agreement; and moreover, would have taken precedence of and prevailed over plaintiff's title had his deed been of record, unless Gray had notice of the arrangement between plaintiff and defendants, and the contrary theory ran through the trial. This is true because, as against Gray, plaintiff's title would have been cut off by the trustee's sale. By conveying to Gray, defendants made it impossible for plaintiff to obtain the good title covenanted to him, and left him

no relief for the purchase money he had paid after Gray had evicted him, except an action on the covenants in defendants' deed to him.

The replication is said to be a new cause of action— a departure from the petition, which should have been stricken out on a motion filed to have that done. The defense set up in the answer is that plaintiff lost his right to sue on the covenants as the result of the trustee's sale. The reply stated the agreement between the parties to have the sale take place as a way to perfect plaintiff's title, seeking no relief on the agreement as another and distinct cause of action, but instead, pleading it in confession and avoidance of the defense set up in the answer, that plaintiff had lost his right to sue on the covenants as the result of the trustee's sale; a proper procedure unless the agreement was a contract which was substituted for the covenants. [Auchincloss v. Frank, 17 Mo. App. 41; Chemical Co. v. Lackawana Line, 70 Mo. App. 274.] If the agreement stands in the way of plaintiff's maintaining an action on the covenants in defendants' deed, it is because if it was made and not kept by defendants, plaintiff was confined for redress to an action on the later agreement and could no longer look to the covenants. The agreement and the covenants appear to be entirely consistent, and this being true, the latter were not superseded, as the contract between the parties, by the former. [3 Page, Contracts, sec. 1340, p. 598; Rhoades v. Railway, 49 W. Va. 494.] The plan was devised, not to take the place of the covenants, but to make them good, and by clearing up the title, prevent any cause of action from accruing on them.

Perhaps an irregularity occurred in summoning five talesmen for the jury panel, but if so, the case ought not to turn on that ruling, it being clear no prejudice to defendants resulted. The very point has been ruled. [State v. Sansone, 116 Mo. 1, 9.]

The court erred in instructing the jury, if they found the issues for plaintiff, to allow him interest on the payments he had made on the purchase price from the date of payment. He was entitled to interest only

from the date he was evicted, as he had been meanwhile in possession and enjoyment of the property and it does not appear plaintiff was answerable over to any one for the rents and profits. [Hutchins v. Roundtree, 77 Mo. 500.] The true interest to be recovered by plaintiff may be computed from the date of eviction, and if plaintiff will remit the excess, the order sustaining the motion for a new trial should be set aside, the verdict reinstated, the *remittitur* entered, and judgment rendered for the right amount.

The cause is remanded to the circuit court with directions to proceed accordingly; the costs of the appeal should be taxed against the respondents. All concur.